Argued and submitted November 2, reversed December 20, 1983

STATE OF OREGON,
*Respondent on review,*

*v.*

KENNETH FOSTER,
*Petitioner on review.*

(No. 81-333C, CA A22845, SC 29601)

674 P2d 587

Marilyn C. McManus, Deputy Public Defender, Salem, argued the cause for petitioner on review. With her on the

petition and brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

JONES, J.

## JONES, J.

Defendant was convicted of felony murder, first degree kidnapping and criminal conspiracy. The facts of the alleged homicide are set forth in the companion case of *State v. Snider,* 296 Or 168, 674 P2d 585 (1983). Defendant appealed and the Court of Appeals affirmed per curiam, stating:

"One of the state's principal witnesses was defendant's accomplice, Walker. Before the trial commenced and again during Walker's testimony, defendant's attorney sought rulings from the court that no mention could be made of the fact that Walker was required to take a polygraph examination as a condition of his plea agreement with the state and that defendant could impeach Walker on the basis of the plea agreement without opening the door to the state's introduction of the polygraph condition as rehabilitation evidence. The court indicated that it was inclined to admit evidence of the polygraph.

"On cross-examination of the accomplice, defendant declined to ask him about the plea agreement. Had he done so, and had the polygraph condition of the agreement then been received, defendant would have had the opportunity to argue on appeal that the admission of that evidence was error. *State v. Middleton,* 61 Or App 680, 658 P2d 555 (1983). Although the court indicated how it would rule, it was never actually called upon to make a ruling. There is no error requiring reversal." *State v. Foster,* 62 Or App 298, 660 P2d 200 (1983).

The first issue we address in this case is whether defense counsel adequately protected his client's record in objecting to evidence of a condition in a plea agreement[1] that

---

[1] The relevant portions of the plea agreement are as follows:

"1. Defendant will give a complete statement regarding everything he knows concerning the kidnapping/death of Andrew Norwest.

"2. Defendant will testify at all trials of all persons charged as a result of this incident.

"3. Defendant will take a polygraph examination as to the truthfulness of his statement to the police and as to his testimony at trial (see agreement attached).

"4. If defendant performs 1, 2 and 3 and is truthful the State will accept a plea to Manslaughter in the First Degree and agree:

"a) to make no recommendations as to length of time but will inform Court as to facts.

"b) State will recommend defendant not be sentenced to an enhanced penalty 161.610."

the state's witness would take and pass a polygraph examination. The Court of Appeals said that the record was not adequately protected. We respectfully disagree. The following took place during pre-trial conference:

"[DEFENSE COUNSEL]: * * * I would present to the Court a copy of the agreement that the State of Oregon has with Terry Walker, the codefendant, Terry Walker, who's agreed to testify for the State now.

"Part of that — lie detector — part of that agreement is that Mr. Walker will submit to a lie detector to assure the D.A. that he will be telling the truth.

"What I'm requesting that I want the Court to do is allow cross-examination about the fact that he has an agreement with the D.A.'s office and to bring out the facts of what the agreement are. We would — there would be no mention of the lie detector test, at all, and further, that Mr. Walker, if he mentions the words 'lie detector' anywhere in his testimony it will be a mistrial for the reason, Sixth Amendment right to confront a witness.

"Now, what is — just a vital part of confronting a witness, anyway, to show that the witness has an agreement with the State of Oregon. That's a reason for Mr. Walker — and the jury should be apprised of that.

"Also, I think, in the way of confrontation, I have a right to cross examine to the hilt, without the fear that he would blurt out, 'But I passed a lie detector on that point.'

"So, taking those rights in mind we get to the thing and say does the jury have a right to know about the lie detector? Well, the case law — they don't have a right to the lie detector and the results of a lie detector test. The only case I have that is right on point is *State v. Herrera,* the one that was retried and the appeal from that, 49 Or App 1075, [621 P2d 1209 (1980), *rev den* 290 Or 652 (1981]. That exact thing happened. The State's main witness, I was cross examining and getting some points and then he talks — 'But, I took a lie detector and passed.'

"The Court on page 1081, says it wasn't reversible because the Court instructed and cured the error, but the point is you don't go and let possible error in and then try to cure it at a later date.

"* * * * *

"That was — this would allow the State to do is, by their own device, prevent effective cross examination. In other

words, anytime they have a witness they want to make a deal with, and any time they have a witness that they think might be subject to cross examination then they say that if you agree to a lie detector test with us, and then once the agreement is made we can't ask about any agreement with the witness because it will come out.

"There's going to be both Terry's testimony — my position is this, for the defendant. We would rather have no mention of any agreement with the State and no mention of the lie detector test and go ahead and appeal the rest of it if we get an adverse ruling. If they didn't find that Terry Walker has agreed to take a lie detector test regarding that, he is going to be so bolstered, his testimony, that they are going to believe him no matter what. And that will be using inadmissible evidence to do that. That is our position.

"* * * * *

"[PROSECUTOR]: I think the situation is properly analyzed in this fashion, that the State has signed an agreement with Terry Walker. If [defense counsel] gets into the agreement on what the facts are of this agreement or what the contents of the agreement are then * * * [t]he agreement itself has to be introduced and the State will be seeking to introduce it.

"Now, as for the results of the polygraph, I think that's a different issue, and as far as introducing the results of any polygraph that he has taken or may take, I think that will probably be barred by the statute.

"I don't have any particular quarrel with his request that Terry Walker be advised not to say, 'I've taken a polygraph and passed.' * * *

"* * * * *

"[DEFENSE COUNSEL:] If the lie detector is going to come with his deal with the State, if I — I can't cross examine on that point, he's not been allowed to confront the witness as he's supposed — to turn it around, it kind of — do you think we would have a right — maybe we do — Mr. [prosecutor], after this trial is over, if Mr. Foster is convicted, and Terry Walker takes the lie detector — and in addition to that there is a new trial if he flunks, and Mr. [prosecutor], but Foster is not a party to the agreement, he can't take advantage of it.

"* * * * *

"* * * There's no reason that Walker can't tell what his deal is, with the Court leaving out the lie detector test.

Otherwise, Mr. Foster has done nothing wrong but he is deprived of that cross examination."

Up to this point in the pre-trial colloquy, the defendant had requested the court to allow cross-examination about the fact that the witness had an agreement with the prosecution for a reduced charge and had moved to exclude any reference to a polygraph examination. Everyone, the prosecutor, the defense counsel and the trial judge, agreed the results of the polygraph would be inadmissible. The judge made no other specific ruling.

Later on in the pre-trial hearing, prior to opening statements, the following took place:

"THE COURT: Okay. First, in the way of pretrial rulings, [defense counsel] asked me to make a ruling on the admissibility of the lie detector test requirement involved in the negotiations with Terry Walker.

"* * * * *

"I'll notify Terry Walker, and his attorney's here at this time, to make sure that he doesn't discuss this lie detector test. I'll take him actually on the stand before testifying, outside the presence of the jury. If for some reason he calls time out, I'll excuse the jury, but he's not to mention it in his testimony.

"* * * I think it's premature for me to be ruling at this time what will not be allowed. At the time, if [defense counsel] begins cross examination as to the agreement, I will say this, [defense counsel], I'll give you an indication that I think if you get into this I will make, allow the State to get into the total agreement.

"[DEFENSE COUNSEL]: I think we need a ruling before it comes up. We've got opening statements. From the very beginning my approach in defending Mr. Foster, if I can get into this agreement without the lie detector test — dirty Terry Walker has an agreement with the State.

"If your ruling — as I said before, will stay completely away from that. I will go to any length to stay away from the lie detector test.

"THE COURT: I'm inclined to — if you get into the State's agreement, the State has a right to put on the evidence of what the lie detector test results are, what the total agreement is."

At this stage of the pre-trial proceeding, the court was still tentative and had made no ruling defendant can claim as error.

After defendant's cross-examination of Terry Walker and a noon recess, the following occurred:

"[DEFENSE COUNSEL]: * * * One thing I would — with regard to Mr. Walker, just so we keep the record clear, I would ask if the Court would reconsider on cross examination about his deal with the D.A.'s office. If the Court would reconsider its ruling, without letting in the lie detector test.

"THE COURT: As I said, you're asking me to make a premature determination. I'm inclined to, if you get into the agreement, inclined to let in the lie detector portion, to let that get in.

"[DEFENSE COUNSEL]: Why is that premature at this point?

"THE COURT: I don't know what questions you're going to be asking. If we get —

"[DEFENSE COUNSEL]: I will just stay with it for an offer of proof. If I were to say to Mr. Walker, isn't it true that you have an agreement with the District Attorney's office, you're ruling that the entire agreement comes in?

"THE COURT: That's correct. That would include the results of any lie detector test and whatever the agreement is. I think it's that he will take the lie detector test.

"[DEFENSE COUNSEL]: Do you have that agreement in the record?

"THE COURT: No. No.

"[DEFENSE COUNSEL]: I'd like, at this point, Mr. [prosecutor] — the four-page agreement. I agree with them, it should be put in. If you will give me a copy we'd like to offer it.

"* * * * *

"THE COURT: It will be part of the record this way.

"[DEFENSE COUNSEL]: We would offer that into evidence as an offer of proof. We would, again, request to be allowed to cross examine Terry Walker — I know that you are not — and move for a mistrial, for the reason — this came up again when I was preparing closing arguments.

"How do you cross examine a State's witness and show that he has a very, very important deal with the District Attorney's office and a very strong reason for him to lie, and

yet we could not cross examine him because I was informed by the Court that yes I can cross examine and if I do then that entire agreement will get in before the Court. The jury will say hey, he can't lie folks. We're going to reduce it to manslaughter. We're only going to do this only if you, Terry Walker, are telling nothing but the truth.

"* * * * *

"THE COURT: State's Exhibit No. 37 has been marked for identification.

"[DEFENSE COUNSEL]: Our offering it is not for the case in chief, but only for the —

"THE COURT: I understand."

■    We deem this to be an appropriate offer of proof of the agreement for the record and not as an offer to have the agreement received as an exhibit to go to the jury. At this point, defense counsel has made an adequate offer of proof under OEC 103(1)(b), which provides:

"Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

"* * * * *

"(b)   In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

Even though these proceedings were held some three months prior to the effective date of the Oregon Evidence Code, the rule adopted evoked no change in the law in respect to an offer of proof.[2] The court's ruling at that point was definite and defense counsel was required to do no more. Of course, after hearing further testimony during the trial, the judge could change his or her mind and indicate to counsel the contested evidence question would be reopened, but unless that is done counsel should be entitled to rely on the court's

---

2

    "* * * In making an offer of proof it is requisite that counsel should be distinct and clear. The tender should embody the specific fact or facts in such connection and in such terms as to be apprehended and ruled upon in the intended sense by the trial judge and be examined and applied in the appellate court in the proper light to test the accuracy of the ruling, if adverse. * * *" Booth-Kelly Lumber Co. v. Williams, 95 Or 476, 483, 188 P 213 (1920).

ruling. On cross-examination of Terry Walker, if defendant's counsel had tried to impeach the witness for bias by showing the culpable witness had made a "deal" with the state for his testimony, the polygraph condition of the plea agreement would have been received.

Over 20 years ago, in *Nielsen v. Brown,* 232 Or 426, 430, 374 P2d 896 (1962), this court said: "It is to be observed at the outset that the procedure of attempting to 'suppress' the testimony of a witness in advance of his being called to the stand is not one to be commended."

In today's trial arena, often the opposite is true. The pre-trial motion to limit evidence, commonly called a "motion in limine,"[3] provides a legal procedure to flush out problems to be encountered during the trial, before a jury is contaminated with the evidence. An objection to evidence, with a motion to tell the jury to disregard it, is a poor alternative. The old cliche, "you can't unring a bell," still applies.

In this case, if the judge had not made a pre-trial ruling, the trial scenario would probably have unfolded as follows:

"Cross-examination of Walker by defense counsel:

"Q. Isn't it a fact you made a deal with the state that you would get off with a reduced charge of manslaughter if you testified against my client?

"A. Yes.

"Redirect by prosecutor:

"Q. But didn't you agree to take a polygraph examination about the truthfulness of your statements to this jury?

"A. Yes.

"Objection: We do not object to the fact of the plea agreement to show the witness's bias, but do move to strike the evidence about the polygraph as irrelevant and improper bolstering of the credibility of the witness.

---

[3] Judge Tanzer criticized the label in *State v. Mills,* 39 Or App 85, 87 n 1, 591 P2d 396 (1979):

"We note an inexplicable but epidemic tendency to attempt to dignify such motions by resort to Latin. Such English phrases as *preliminary motion* and *motion to limit evidence* are not only more specifically descriptive than the Latin phrase *motion in limine,* but are also understandable. *Res est moderata qualitate materiae suae, non dignitate tituli.*" (Original emphasis.)

The reasons for seeking pre-trial rulings are, among others, to obtain guidance on how to conduct voir dire and opening statements and, more importantly, to prevent the jury from hearing a trial scenario such as the one above. If counsel must wait to make an objection and receive a ruling in front of the jury, the client could be prejudiced even though the ruling was in the client's favor. With famous legal rhetoric, Justice Cardozo addressed this problem in *Shepard v. United States,* 290 US 96, 54 S Ct 22, 78 L Ed 196 (1933), when he referred to the procedure of a judge telling a jury it may accept part of a statement but must reject other portions of it: "The reverberating clang of those accusatory words would drown all weaker sounds. It is for ordinary minds, not for psychoanalysts, that our rules of evidence are framed."

We are not suggesting that a trial judge must make a commitment when confronted with a motion to limit evidence. This should be left to the discretion of the trial judge. Most evidence rulings, probably 90 percent, are routinely conducted during trial. However, sometimes the better practice is to conduct motions to limit evidence before trial, such as sorting out which prior convictions under OEC 609 will be admitted or excluded. We agree with the statement by the Ninth Circuit Court of Appeals:

> "There is no need in this case to decide when, during the pretrial proceedings or the trial, a motion *in limine* should be made, or when it should be ruled upon. The matter should be left to the discretion of the trial court with a reminder that advance planning helps both parties and the court. Trial by ambush may produce good anecdotes for lawyers to exchange at bar conventions, but tends to be counterproductive in terms of judicial economy. Other courts considering the problem have recommended a provisional ruling in advance of proposed testimony, with the judge free to meet any deception by modifying the ruling. *See, e.g., United States v. Oakes,* 565 F.2d 170 (lst Cir. 1977)." *United States v. Cook,* 608 F2d 1175, 1186 (9th Cir 1979).

In the case at bar, defense counsel did not have to walk barefoot through any more legal coals to protect his client's record. He made a sufficient offer of proof of what would happen in the trial to permit the court to rule intelligently on the propriety of the offered evidence, he asked for a final ruling and, although the trial judge was not obligated to

do so, the judge gave a final ruling. There was no need for any further procedure to preserve the assignment of error.

■ The second issue we address is whether it would have been error for the trial judge to allow into evidence the plea agreement conditions. The answer is "yes," and the error would be prejudicial. *State v. Snider, supra.*

The Court of Appeals is reversed.