Argued and submitted October 27, 1994, affirmed July 26, petition for review allowed October 17, 1995 (322 Or 193)

# STATE OF OREGON,
*Respondent,*

*v.*

# ALICONN DWON COLE,
*Appellant.*

## (C9207-33965; CA A80160)

900 P2d 517

Steven V. Humber, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Stephanie S. Andrus, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

HASELTON, J.

Riggs, J., dissenting.

## HASELTON, J.

Defendant appeals from his conviction for being a felon in possession of a firearm. ORS 166.270. He argues that the trial court erred in accepting his proffered waiver of counsel, particularly in the context of a pretrial suppression hearing. We affirm.

On July 10, 1992, Portland police officer Ronald Cash stopped a vehicle, in which defendant was a passenger, for a traffic violation. Cash asked the driver for consent to search the vehicle, the driver assented, and, in the ensuing search, Cash discovered a loaded firearm beneath the passenger seat where defendant was sitting. Defendant was charged with the crime of felon in possession of a firearm.

At his arraignment, the following colloquy ensued:

"THE COURT: I have an indictment charging you with being a felon in possession of a firearm. Do you have a lawyer?

"THE DEFENDANT: No, I don't, Your Honor.

"THE COURT: Okay. Can you afford one? * * *

"[DEPUTY DISTRICT ATTORNEY]: Your Honor, on July 13th, * * * defendant was directed to hire his own attorney, or he wanted to hire some attorney or proceed pro se.

"THE COURT: Okay. You want to do that, then? Do you want to represent yourself, then?

"THE DEFENDANT: Yes, I do.

"THE COURT: Okay. What we're going to do, then * * *, is if someone — lawyer, will just stand there, kind of stand in for you and basically, what that consists of is you waive reading — You're going to get a copy of the indictment and advice of rights. I think it — you know your rights, and you're going to get some dates, and these are very important. I'll explain them to you in a minute."

An "assistant" stood in for defendant during the remainder of the arraignment proceeding and entered defendant's not guilty plea.

Defendant subsequently filed a *pro se* motion to suppress all evidence seized during the stop and argued the motion himself. The court denied that motion but immediately thereafter, on its own motion, appointed counsel to represent defendant at trial:

> "THE COURT: I think you would be much better off having a lawyer represent you than you trying this case yourself about whether you were in possession of a gun. You probably would make a good witness but you don't do a very good job as your lawyer."

Defendant was ultimately convicted after a stipulated facts trial.

Defendant's sole contention on appeal is that the trial court erred in allowing him to proceed *pro se* at the hearing on his motion to suppress.[1] Specifically, he argues that the court failed to advise him adequately of the risks of self-representation and that, consequently, his waiver of counsel was not voluntary and intelligent. The state contends that defendant's claim of error was not properly preserved because, even after counsel was appointed, defendant did not object to the court's acceptance of his pretrial waiver of counsel. The state also contends that, even if the trial court erred in allowing defendant to proceed *pro se*, that error was harmless.

■ We first address, and reject, the state's non-preservation argument. The Supreme Court and we have consistently assumed that a trial court's failure to insure that an uncounselled defendant is adequately informed of the risks of self-representation is reviewable without any objection by the defendant. *See, e.g., State v. Meyrick*, 313 Or 125, 831 P2d 666 (1992); *State v. Curran*, 130 Or App 124, 880 P2d 956 (1994); *State v. Meyer*, 116 Or App 80, 840 P2d 1357 (1992); *State v. Carter*, 107 Or App 48, 810 P2d 872 (1991). Although it is unclear whether that assumption derives, ultimately, from some principle of special *"per se* preservation" or some variant of the plain error doctrine, it makes practical and legal sense: It would be absurd to require an uncounselled defendant to object that his or her waiver of counsel was inadequately informed. Such a hypothetical defendant would have to understand the consequences of a waiver of counsel well enough to know that an uninformed waiver is objectionable, but not well enough to make an informed decision to waive.

---

[1] Defendant does not challenge the trial court's denial of his motion to suppress.

The state suggests, nonetheless, that this case differs from *Meyrick, Curran, et al*, because here, unlike in those cases, counsel *was* subsequently appointed for defendant and appointed counsel failed to object to the court's earlier acceptance of an uninformed waiver. Thus, in the state's view, error was effectively "unpreserved."

We are unaware of any authority for such "unpreservation." In particular, the state does not present any authority for the proposition that, unless subsequently appointed counsel revisits prior error, that error shall be deemed, retroactively, to have been rendered unreviewable.[2] Consequently, we conclude that the error is reviewable.

In *Curran*, we reiterated and summarized *Meyrick's* standards for assessing the validity of waivers of counsel:

"A valid waiver requires that the defendant know that he has a right to counsel and that he intentionally relinquishes it. We examine the totality of the circumstances to see if there is a knowing and intentional waiver of the right to the assistance of counsel. That determination is based in part on the information a defendant has about the consequences and pitfalls of proceeding without counsel.

"*Although no particular catechism is required, the court must provide some information about the dangers of self-representation.*" 130 Or App at 127 (emphasis supplied, citations omitted). *Accord Meyer*, 116 Or App at 84-85.

Here, the record indicates that the trial court never engaged defendant in any colloquy regarding the dangers of proceeding without counsel. Moreover, nothing in the record suggests that defendant was already aware of those dangers. Consequently, after assessing the totality of the circumstances, we conclude that defendant's waiver of his right to counsel was ineffective. *See Curran*, 130 Or App at 128; *Meyer*, 116 Or App at 84-85.

---

[2] The state does not suggest that appointed counsel's silence waived the earlier error. Nor could it. That is so for two reasons. First, regardless of whether present counsel might have revisited the uninformed waiver issue by seeking to relitigate suppression-related issues either before or during the stipulated facts trial, counsel was not required to revisit the suppression issue. *State v. Foster*, 296 Or 174, 183-84, 674 P2d 587 (1983); *State v. Engweiler*, 118 Or App 132, 135, 846 P2d 1163, *rev den* 317 Or 486 (1993). Second, counsel's mere inaction was insufficient, without more, to establish an "intentional relinquishment or abandonment of a known right or privilege." *Church v. Gladden*, 244 Or 308, 312-13, 417 P2d 993 (1966).

The state argues, however, that even if the trial court erred in accepting defendant's waiver of counsel, his conviction should not be reversed because the error was harmless. In considering that contention, we must first determine whether the error is even subject to harmless error analysis. In particular, is the error "structural error," compelling automatic reversal?

■        Although errors in a criminal case, including constitutional errors, are generally subject to harmless error analysis,[3] some constitutional rights are "so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman v. California*, 386 US 18, 23, 87 S Ct 824, 17 L Ed 2d 705, 710 (1967).[4] Such infractions, including adjudication by a biased judge, *Tumey v. Ohio*, 273 US 510, 47 S Ct 437, 71 L Ed 749 (1927), abrogation of the right to self-representation, *McKaskle v. Wiggins*, 465 US 168, 104 S Ct 944, 79 L Ed 2d 122 (1984), and giving of a constitutionally deficient jury instruction, *Sullivan v. Louisiana*, 508 US ___, 113 S Ct 2078, 124 L Ed 2d 182 (1993), are deemed structural error, which, *per se*, require reversal.

The Supreme Court has characterized a *complete* denial of the right to counsel as structural error. *See Rose v. Clark*, 478 US 572, 577, 106 S Ct 3101, 92 L Ed 2d 460, 470 (1986) (citing *Gideon v. Wainwright*, 372 US 335, 83 S Ct 792, 9 L Ed 2d 799 (1963), and the "*complete* denial of right to counsel" in list of constitutional errors that require reversal

---

[3] *See Delaware v. Van Arsdall*, 475 US 673, 681, 106 S Ct 1431, 89 L Ed 2d 674 (1986) ("[W]e have repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt."); *State v. Isom*, 306 Or 587, 595, 761 P2d 524 (1988) ("Under Oregon law, a verdict against a criminal defendant may be affirmed notwithstanding trial error if the error did not affect a 'substantial right' of the defendant."); *see also* Or Const, Art VII (amended), § 3; ORS 138.230 ("[T]he court shall give judgment, without regard * * * to technical errors, defects or exceptions which do not affect the substantial rights of the parties.").

[4] Although there appear to be no Oregon cases that expressly adopt the distinction that the United States Supreme Court drew in *Chapman*, it is apparent from our cases that we, too, treat some constitutional errors as "structural," *i.e.*, beyond harmless error analysis. *See, e.g., State v. Meyer*, 116 Or App 80, 840 P2d 1357 (1992) (reversal, without harmless error analysis, following determination that defendant's right to counsel had been abrogated); *State v. Verna*, 9 Or App 620, 498 P2d 793 (1972) (reversal, without harmless error analysis, following determination that defendant's right to self-representation had been abrogated).

without regard to the evidence in the particular case). Our court has, albeit implicitly, reached the same conclusion under the Oregon Constitution. *See, e.g., Meyer*, 116 Or App at 84-85 (no harmless error analysis following determination that waiver of counsel was invalid); *State v. Fiala*, 107 Or App 193, 810 P2d 1344 (1991) (same).

■     Here, defendant did not suffer a complete denial of the right to counsel in the sense that he was uncounselled throughout all proceedings. He was uncounselled at one substantive proceeding — the submission and argument of his motion to suppress — and immediately thereafter obtained counsel. The issue, then, is whether the trial court, by allowing defendant to litigate the suppression motion *pro se*, based on an invalid waiver of counsel, committed structural error, notwithstanding the subsequent appointment of counsel. The answer lies in the principle underlying the structural error doctrine, *i.e.*, that certain errors render a trial fundamentally unfair and, therefore, useless as a vehicle for determining guilt:

> "The State of course must provide a trial before an impartial judge, with counsel to help the accused defend against the State's charge. Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair. Harmless-error analysis thus presupposes a trial, at which the defendant, represented by counsel, may present evidence and argument before an impartial judge and jury." *Rose*, 478 US at 577-78, 92 L Ed 2d at 470 (citations omitted).

Here, the partial denial of defendant's right to counsel did not impair the function of his trial as a "vehicle for determination of guilt or innocence." *Id*. Whatever the impact of defendant's lack of representation on the trial court's suppression ruling, appointed counsel could have, either before or during trial, asked the court to reconsider that ruling on the ground that defendant had been impermissibly unrepresented. Moreover, defendant does not argue that the circumstances of the court's earlier ruling somehow foreclosed effective reconsideration. Thus, the error was not structural and is susceptible to harmless error analysis.

■ An error that violates the Oregon Constitution is harmless if there is "little likelihood that the error affected the verdict." If the error violates the United States Constitution, the error must be harmless beyond a reasonable doubt. *State v. Walton*, 311 Or 223, 231, 809 P2d 81 (1991). Thus, the harmless error issue reduces to whether there was little likelihood (or no reasonable doubt) that defendant's lack of representation during the one material procedural event that occurred before he retained counsel — the suppression hearing — affected his conviction.

■ The state argues that the result of the suppression hearing was correct and would not have been altered even if defendant had been represented in that context.[5] At the suppression hearing, the state argued that the warrantless search of the vehicle was constitutional because: (1) it was made in the course of a valid traffic infraction stop, after the officer developed a reasonable suspicion that defendant and the vehicle's driver posed a threat to his safety, *State v. Bates*, 304 Or 519, 747 P2d 991 (1987); and (2) the driver had freely consented to the search, *State v. Kennedy*, 290 Or 493, 624 P2d 99 (1981).

Defendant acknowledged that the driver had verbally assented to the search but disputed the "officer safety" justification for the search. The trial court denied the suppression motion on the ground that the search was a valid consent search.

When defendant later obtained counsel, counsel did not ask the court to revisit that ruling, or otherwise assert any factual or legal grounds that would indicate why that ruling was erroneous. In particular, counsel never argued that defendant had failed to advance all of the plausible bases for suppression that competent counsel would have, or had failed to argue the bases that were raised as effectively or persuasively as defense counsel would have. Nor do defendant's arguments to this court purport to demonstrate how competent counsel could have presented different, or more

---

[5] The state does not, and could not, argue that the error was harmless because it could have convicted defendant even if the suppression issue had been decided in defendant's favor. Indeed, the object of defendant's suppression motion — the fact that a gun was discovered under the seat of the vehicle in which defendant was riding — was vital to his conviction.

effective, arguments that might have prevailed at the suppression hearing. Defendant's failure to assign error directly to the trial court's denial of his motion to suppress underscores that fact.

Given those circumstances, we conclude that there is little, if any, likelihood that the lack of representation affected the outcome of the suppression hearing and defendant's consequent conviction. We further conclude, for the same reason, that the trial court's error in accepting defendant's invalid waiver of counsel, and in proceeding on that basis, was harmless beyond a reasonable doubt.

Affirmed.

**RIGGS, J.,** dissenting.

I agree with the majority that defendant's waiver of his right to counsel at the pretrial suppression hearing was constitutionally invalid and that the trial court erred in allowing defendant to proceed without representation. However, I do not agree with the majority's conclusion that the trial court's error in accepting defendant's waiver of counsel was harmless. Therefore, I respectfully dissent.

The harmless error rule arises from Article VII (amended), section 3, of the Oregon Constitution, which states, in part, that if the court is of the opinion

> "that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial[.]"

As construed by the Supreme Court, the harmless error rule requires affirmance despite error if there is little likelihood that the error affected the verdict. *State v. Williams*, 313 Or 19, 56, 828 P2d 1006, *cert den* 506 US ___, 113 S Ct 171 (1992).[1]

---

[1] The harmless error analysis has traditionally been cast as a two-part inquiry of whether (1) there is substantial and convincing evidence of guilt, and (2) little, if any, likelihood that the error affected the verdict. *See State v. Walton*, 311 Or 223, 230-31, 809 P2d 81 (1991). Since *Williams*, the court has continued to apply the two-part test, but has nevertheless recognized that it is "equally possible" to collapse the analysis to the single inquiry that both the majority and I have set forth in our opinions. *State v. Parker*, 317 Or 225, 234 n 10, 855 P2d 636 (1993).

In this case, defendant's conviction hinged entirely on the outcome of the suppression hearing at which he was unrepresented. The weapon found during Officer Cash's warrantless search of the vehicle, the subject of defendant's motion to suppress, was vital to the state's case. The remaining evidence would not have supported a guilty verdict.[2] Notably, the state does not argue on appeal that the evidence in this case was so substantial that it could have obtained a conviction even if the court had granted defendant's motion to suppress. *See State v. Kirkpatrick*, 117 Or App 614, 844 P2d 283 (1993) (presumed error harmless because independent of the evidence that defendant sought to suppress, there was substantial evidence of guilt). Instead, the state contends, and the majority agrees, that the motion was correctly decided and that the verdict would not have changed had defendant been represented by counsel at the pretrial hearing.

Unlike the majority, I am not willing to speculate on the propriety of the trial court's ruling when the only basis on which to make that decision is the record of the proceeding that occurred immediately after defendant was unconstitutionally deprived of his right to counsel. I do not believe that the record, as it currently exists, accurately reflects the issues and arguments that *might* have been developed at the suppression hearing had defendant been represented by counsel.

Defendant's sole strategy at the hearing was to attack Cash's credibility by challenging his factual rendition of the events surrounding the stop and warrantless search of the vehicle in which defendant was riding. Defendant did not testify, nor did he present any other witnesses, such as the driver of the vehicle, who might have contradicted Cash's testimony. Such testimony certainly may have influenced the court's decision, particularly on the issue of whether Cash had consent to search the vehicle.[3] For instance, even though

---

[2] Cash noted that defendant twice made furtive gestures, as if placing something beneath the passenger seat. Cash also testified that defendant appeared to be "extremely agitated, verbally abusive, perspiring and * * * nervous" during the course of the stop.

[3] The court denied defendant's motion on the ground that Cash had consent to search the vehicle:

"As far as the motion to suppress[,] after the consent came in, [the officer] had authority to go ahead and search that car. He finds that gun there."

defendant acknowledged and Cash testified that the driver gave "consent," the court did not seem to rely much on their statements. Rather, the court expressly noted that, because the driver of the car did not testify and because neither party raised the issue of whether the driver actually consented, it would have to "assume" that consent was given. To me, that statement reflects uncertainty surrounding the court's conclusion and casts doubt on the majority's proposition that the court's denial of defendant's motion to suppress was a virtual certainty regardless of whether defendant was represented by counsel.

The majority also attaches significance to the fact that defendant's counsel, appointed after the suppression hearing, failed to challenge at trial the court's ruling on the motion to suppress:

> "[Defendant's] counsel never argued that defendant had failed to advance all of the plausible bases for suppression that competent counsel would have, or had failed to argue the bases that were raised as effectively or persuasively as defense counsel would have." 135 Or App at 650.

I fail to understand how, if defendant's counsel was "not required to revisit the suppression issue [at trial]," 135 Or App at 647 n 2, as the majority claims, that counsel's failure to do so can later become fatal to defendant's case. But the majority opinion does, in fact, hold counsel to that higher standard.[4]

I do not agree with the majority's conclusion that had defendant been represented, the motion to suppress would not have turned out differently. Because the state's conviction was so dependent on the outcome of the suppression hearing, I cannot say that there is little likelihood that the error in accepting defendant's invalid waiver of counsel at

---

[4] Furthermore, unlike the majority, I do not consider defendant's failure on appeal to challenge the court's ruling on the motion to be of much significance, either. Had defendant attempted to raise new grounds in support of his motion to suppress, we likely would have declined to consider them, because they were not presented to the trial court. ORAP 5.45(2); see State v. Hickman, 273 Or 358, 540 P2d 1406 (1975). Aside from presenting his original arguments again, the only other argument defendant could have possibly raised in challenging the court's ruling on the motion to suppress is the same argument that has been presented in this appeal; i.e. that the court's erroneous deprivation of his right to counsel tainted the entire proceeding and requires reversal of the court's ruling on the motion to suppress.

that hearing affected the verdict. Therefore, I would conclude that the error is not harmless and would reverse defendant's conviction.[5] *See State v. Fiala*, 107 Or App 193, 810 P2d 1344 (1991) (reversing conviction after trial court accepted invalid waiver of counsel); *State v. Carter*, 107 Or App 48, 810 P2d 872 (1991) (same).

I respectfully dissent.

---

[5] Because I resolve this issue on state constitutional grounds, I need not address whether defendant's right to counsel under the federal constitution was violated.