Argued and submitted April 18, affirmed August 22, 2007

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## STANLEY LEE MILLER,
*Defendant-Appellant.*

Josephine County Circuit Court
01CR0698; A126149

166 P3d 591

Jesse Wm. Barton argued the cause and filed the briefs for appellant.

Ryan Kahn, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman, Judge, and Simpson, Judge pro tempore.

LANDAU, P. J.

## LANDAU, P. J.

Defendant was convicted, after a jury trial, of first-degree sodomy, first-degree rape, second-degree kidnapping, and unlawful use of a weapon. He now appeals, assigning error to (1) the trial court's decision to deny his motion for substitute counsel and instead require him to proceed *pro se* during the first day of trial; (2) the imposition of consecutive sentences without submitting the issue to a jury; and (3) the trial court's instruction to the jury that it could convict by less than a unanimous jury and its entry of judgment on a less than unanimous verdict. We reject each of those contentions and affirm.

### I. FACTS

The relevant facts are not in dispute. Defendant received court-appointed counsel. After 20 months of trial preparation—and two weeks before the scheduled trial date—defendant's first counsel withdrew due to an undisclosed ethical conflict. The trial court appointed a second attorney for defendant and also granted a postponement so that new counsel could prepare for trial. After six months, that attorney also moved to withdraw due to an undisclosed conflict of interest, and the court granted the motion. The court appointed defendant's third attorney, Hendershott, and set a trial date some five months out.

On the first day of trial, the court held *voir dire* and impaneled the jury. The attorneys gave their opening statements, and the state called its first witness, the victim. At that point, defendant interrupted the proceeding and stated, "As God is my witness, my lawyer is not properly representing me. He has not prepared a defense." The following colloquy then occurred:

"THE COURT:   Just a moment—

"THE DEFENDANT:   And the judge—

"THE COURT:   Time out.

"THE DEFENDANT:   And the—and the Court are—are—

"(Judge whistles.)

"THE DEFENDANT:   —are leading the jury to a guilty verdict.

"THE COURT:   Time out. * * *

"* * * * *

"THE COURT:   All right. Sit down. Counsel, do you wish to be heard?

"MR. HENDERSHOTT:   Perhaps we should discuss it with the jury at absence?

"THE COURT:   Yes. All right. Very well. [Court dismisses jury to jury room.]

"* * * * *

"MR. HENDERSHOTT:   I take no position in the matter, Your Honor. * * * [Defendant] has some ideas about evidence that has not proved fruitful in investigation. I declined to proceed with that and he doesn't like it.

"THE DEFENDANT:   That's not—that's not—

"MR. HENDERSHOTT:   If the Court wants to relieve me, then that's fine. I'll get in my truck and I'll go home.

"THE COURT:   Thank you. [Defendant]? Anything you want to say to the Court?

"THE DEFENDANT:   Yes. He's—he's not adequate counsel. He—he's been very—yesterday we had evidence suppressed and that's what our whole thing was going on. He—he already told me two weeks ago that he wasn't very familiar with DNA. He—he's not adequate. * * * [T]he law says that I am due to adequate counsel. And now that we have to fight this a different way, I feel that I do not have adequate counsel.

"* * * * *

"THE COURT:   You have two choices. Now listen to me.

"THE DEFENDANT:   Okay.

"* * * * *

"THE COURT:   * * * Now as far as your complaints about your counsel, we will proceed without your counsel serving as your court appointed counsel. I will ask Mr. Hendershott, in that event, to act as standby counsel in case

you have any questions you want to ask him during the trial. But you must understand that in that event you will be proceeding without the benefit of counsel.

"THE DEFENDANT: Is it not my legal right to have proper, adequate counsel?

"THE COURT: Yes. But as far as I know, based on my examination of the record and my knowledge of Mr. Hendershott, he is more than adequately competent to handle your case.

"THE DEFENDANT: He doesn't know—

"THE COURT: There is nothing before—

"THE DEFENDANT: —about DNA.

"THE COURT: —this Court—there is nothing before this Court at this time that gives me any reason at all to believe that he is not fully competent to represent you in this case. * * * So it is your choice whether you want to proceed with counsel or without counsel.

"THE DEFENDANT: Counsel also had an ethical issue with me as well that he told me that he would have to step down as my attorney and—

"THE COURT: What is the ethical issue?

"* * * * *

"MR. HENDERSHOTT: [Defendant] had two previous lawyers, both of whom withdrew under circumstances that they can't talk about. I have suspicions, but never got to that point, which may be due to a client who wises up after it happens a couple of times. But it's borderline.

"Like I said, there were issues that we tried to investigate. Those avenues were not fruitful and I declined to proceed further in that line of inquiry—

"THE COURT: All right.

"MR. HENDERSHOTT: —as a matter of presenting evidence. [Defendant] is highly unhappy about that.

"THE COURT: Anything further?

"MR. HENDERSHOTT: I will move to withdraw if he insists on proceeding in that area because I would have to.

"THE COURT: Do the two of you want to talk for a few minutes to decide how we're going to proceed here?

"THE DEFENDANT: I guess, yes."

The court recessed so that defendant and Hendershott could confer in private. The colloquy then resumed.

"THE COURT: Mr. Hendershott?

"MR. HENDERSHOTT: Yes, Your Honor, I had some discussion with [defendant]. My suspicions about the problems we were having before are confirmed. I move to resign.

"THE COURT: All right. [Defendant], your attorney has asked to withdraw as your counsel in this case. Is there anything you want to say? I gather from your previous statements that you're not satisfied with his services on your behalf, is that correct?

"THE DEFENDANT: Yes, sir.

"THE COURT: All right. If he withdraws under these circumstances and at this late hour, the record will show that opening statements have been made in this trial, and that the State has called its first witness.

"In view of that fact, unless you have another suggestion that is acceptable to the Court, we're going to proceed with the trial. I will instruct Mr. Hendershott to remain and serve as standby counsel. And as standby counsel, he will be available to assist you to the extent you desire his services. Do you understand that?

"THE DEFENDANT: Yes, sir.

"THE COURT: Do you have any questions about the law? About the evidence?

"THE DEFENDANT: If my attorney can't go forward due to an ethical issue, it's—it's his duty to step down, correct? So—

"THE COURT: It—that may be correct. I—he did—

"THE DEFENDANT: So—so—

"THE COURT: —he did not elaborate, so I don't know what the ethical—

"THE DEFENDANT: Okay.

"THE COURT: —problem is. But he has indicated that he thinks there is an ethical conflict.

"THE DEFENDANT: Yes, sir.

"THE COURT: And I accept that primarily because you said you wanted to fire him in any—in any event.

"THE DEFENDANT: Yes, sir. But he stepped down because of an issue—issue. Not because of my choice that I didn't think he was adequate. He stepped down [due] to an ethical issue. So that—I should—I should be entitled to another lawyer with a fair trial. With adequate counsel to represent me.

"THE COURT: I—I think that your request is not timely made in the middle of trial, and you are not entitled, in my judgment, to the appointment of a—as I understand it, it would be the fourth court appointed lawyer.

"THE DEFENDANT: Third.

"THE COURT: There were two others—

"THE DEFENDANT: The fourth. Yes, sir.

"THE COURT: —before Mr. Hendershott.

"THE DEFENDANT: Yes, sir.

"THE COURT: So he's number three. You're now asking that a fourth lawyer be appointed.

"THE DEFENDANT: I didn't ask for the other two. One of them had known somebody in the case and had to step down. And I don't know why the other one stepped down.

"THE COURT: Okay. In any event, as far as the Court is concerned, I've ruled."

The trial continued, and the court took testimony for approximately two and one-half hours. The state called five witnesses—the victim, a deputy sheriff who had assisted in the investigation at the scene, the emergency room nurse who had examined the victim, the victim's mother, and the 9-1-1 dispatcher. Defendant cross-examined the victim, the deputy sheriff, and the emergency room nurse. The court then called a recess until the following morning.

The next morning, the court began by asking Hendershott for an affidavit in support of his motion to withdraw and then advised defendant of the consequences of conviction and self-representation. Defendant and Hendershott conferred, and Hendershott told the court that defendant had decided to have Hendershott serve as his counsel, after all. From that point on, Hendershott represented defendant.

The state recalled the victim, whom Hendershott cross-examined. The state then called seven additional witnesses: two other deputy sheriffs who had investigated the scene, taken evidence and interviewed the victim, the hospital physician who had conducted the physical examination of the victim, a sheriff's detective and a deputy sheriff who had collected evidence, and two state forensic scientists. Hendershott cross-examined each witness. On the third day of trial, Hendershott put on defendant's evidence, and the trial concluded. The jury convicted defendant of all charges by a vote of 10 to 2.

## II. ANALYSIS

### A. *Request for substitute counsel*

Defendant first challenges several decisions that the trial court made in response to his request for substitute counsel. He begins by arguing that the assessment of his request for substitute counsel was itself a "critical stage" of the proceedings that required appointment of separate counsel and that the trial court erred in failing, *sua sponte*, to appoint such counsel. Next, he argues that the trial court, after determining that Hendershott was competent, erred in allowing him to withdraw because of an ethical conflict. Defendant then contends that, once the trial court allowed Hendershott to withdraw, it abused its discretion in failing to appoint substitute counsel, in violation of his right to counsel under ORS 135.045, Article I, section 11, of the Oregon Constitution, and the Sixth Amendment to the United States Constitution. *See State v. Langley*, 314 Or 247, 258, 839 P2d 692 (1992), *adh'd to on recons*, 318 Or 28, 861 P2d 1012 (1993) (trial court's decision whether to allow counsel to withdraw reviewed for abuse of discretion). Finally, he contends

that the trial court further committed reversible error in failing to warn him of the risks of self-representation when trial resumed and before defendant began representing himself.

In response to defendant's contention that the hearing to determine whether counsel could withdraw was a critical stage of the proceeding for which he was entitled to court-appointed counsel, the state notes that defendant never asked the court to appoint him separate counsel for the limited purpose of representing him during that stage of the proceeding. In response to defendant's contention that the court erred in failing to appoint substitute counsel, the state argues that defendant was not entitled to a fourth appointed counsel because, by insisting that Hendershott pursue a line of defense that was not supported by the evidence, defendant created the situation that resulted in Hendershott's ethical conflict and withdrawal. In response to defendant's contention that the court failed to advise him of the risks of self-representation, the state argues that, in light of defendant's insistence that he wanted new counsel and did not want to proceed *pro se*, defendant understood the importance of having counsel, and it was not error to fail to advise him of the risks of self-representation. If, the state contends, the court did err in failing to appoint substitute counsel or to advise defendant of the risks of self-representation, the errors were harmless and do not require reversal.

Defendant replies that it does not matter whether the failure to grant his motion or advise him of the risks of self-representation were harmless because the trial court's errors amounted to "structural error," for which prejudice is presumed to have occurred.

1. *Whether the hearing on defendant's motion was a "critical stage"*

■    We begin with defendant's argument that the hearing on his motion to require Hendershott to withdraw was itself a critical stage of the proceedings, which entitled him to the appointment of separate counsel. We agree with the state that the contention is unpreserved. At no time did defendant ask the trial court to appoint such separate counsel. The trial court cannot be faulted at this stage for failing to do what defendant never asked it to do. *State v. Wyatt*, 331 Or 335,

343, 15 P3d 22 (2000). In any event, we note that the court allowed Hendershott to withdraw; defendant accordingly prevailed on his request, and any error in failing to appoint separate counsel was harmless.

2. *Denial of motion to appoint substitute counsel*

We turn to the parties' arguments about whether the trial court erred in refusing to appoint substitute counsel. We review the trial court's denial of motion for substitute counsel for abuse of discretion. *Langley*, 314 Or at 258. In evaluating the trial court's exercise of discretion, we take into account a number of factors, including the extent to which delay already had occurred in the case, *State v. Taylor*, 207 Or App 649, 662, 142 P3d 1093 (2006), *rev den*, 342 Or 299 (2006), and "the need for an orderly and efficient judicial process," *State v. Edwards*, 132 Or App 590, 593, 890 P2d 420 (1995).

In this case, we find no abuse of discretion. The trial court properly took into consideration the fact that this was but the latest in a series of motions to appoint substitute counsel (the fourth). The case already had been delayed nearly two years as a result of defendant's motions. Moreover, defendant waited to make his motion until trial had begun and the jury had been impaneled. To grant defendant's motion, the trial court would have been forced to declare a mistrial and sanction further delays. In addition, as the state observes, the reason for the request was that defendant's lawyer would not advance a defense that counsel regarded as unethical. A defendant does not have the constitutional right to counsel who will violate ethical rules to advance a defense. *See, e.g.*, *Howe v. Cupp*, 55 Or App 247, 252, 637 P2d 933 (1981), *rev den*, 292 Or 863 (1982) (defendant was not constitutionally entitled to have counsel elicit perjured testimony). We reject the argument without further discussion.

3. *Failure to advise of consequences of self-represen-tation*

We turn to the parties' contentions concerning the trial court's failure to advise defendant of the risks of self-representation. For the reasons that follow, we agree with the state that, if the trial court erred in failing to advise

defendant of those risks, any such error did not amount to "structural error" and was harmless.

■■■■ Under Article I, section 11,[1] of the Oregon Constitution and the Sixth Amendment to the United States Constitution,[2] a criminal defendant has the right to representation by counsel, and, when a trial court allows a criminal defendant to represent himself at trial, the court must ensure that the defendant voluntarily and intelligently waives his right to counsel. *State v. Meyrick*, 313 Or 125, 831 P2d 666 (1992). A waiver of the right to counsel is valid only if the defendant understands that (1) he or she has the right to counsel; and (2) there are risks inherent in self-representation. *Id.* at 132-33. The state can establish a valid waiver by showing that the trial court engaged the defendant in a colloquy that verified the defendant's understanding of the risks of self-representation. *State v. Jackson*, 172 Or App 414, 422, 19 P3d 925 (2001). The question before us is whether, assuming that the trial court failed to comply with the foregoing requirements, that failure was "structural error" and, if not, whether the failure was harmless.

The Oregon Supreme Court has rejected the concept of "structural error" under the Oregon Constitution, *Ryan v. Palmateer*, 338 Or 278, 294-96, 108 P3d 1127, *cert den*, 546 US 874 (2005), reasoning that the doctrine does not provide a useful analytical tool for Oregon courts in determining whether legal error in a trial proceeding should result in reversal. Rather, the court concluded, "[t]his court's cases discussing prejudicial and harmless error appropriately apply the controlling constitutional requirements and provide sufficient guidance to lower courts and counsel." *Id.* at 297.

The structural error principle remains viable in federal jurisprudence, however. Federal courts have concluded that certain constitutional defects disturb the basic framework within which a trial is conducted and permeate "[t]he

---

[1] Article I, section 11, of the Oregon Constitution provides, in part:

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel * * *."

[2] The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defen[s]e."

entire conduct of the trial from beginning to end" so that the trial cannot "reliably serve its function as a vehicle for determination of guilt or innocence." *Arizona v. Fulminante*, 499 US 279, 309-10, 111 S Ct 1246, 113 L Ed 2d 302 (1991), *quoting Rose v. Clark*, 478 US 570, 577-78, 106 S Ct 3101, 92 L Ed 2d 460 (1986).

In *Fulminante*, for example, the court explained that a criminal defendant can prevail on appeal without showing that error was prejudicial only if he complains of "structural errors," *i.e.*, errors that "defy analysis by 'harmless-error' standards" because they "affec[t] the framework within which the trial proceeds," and are not "simply an error in the trial process itself." 499 US at 309-10. *See Satterwhite v. Texas*, 486 US 249, 257, 108 S Ct 1792, 100 L Ed 2d 284 (1988) (structural error exists when "the deprivation of the right to counsel affect[s]—and contaminate[s]—the entire criminal proceeding").

Because a defendant is relieved of the burden to show prejudice, a finding of structural error is rare and limited to exceptional cases. *Johnson v. United States*, 520 US 461, 468, 117 S Ct 1544, 137 L Ed 2d 718 (1997). Among the types of error that have been held to be structural is the complete denial of counsel to a criminal defendant. *Id.* at 469 (citing *Gideon v. Wainwright*, 372 US 335, 83 S Ct 792, 9 L Ed 2d 799 (1963)). In *United States v. Cronic*, 466 US 648, 659, 104 S Ct 2039, 80 L Ed 2d 657 (1984), the Court said, "The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial." In the context of the Sixth Amendment right to counsel, "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." *Strickland v. Washington*, 466 US 668, 692, 104 S Ct 2052, 80 L Ed 2d 674 (1984).

In *United States v. Gonzalez-Lopez*, ____ US ____ , 126 S Ct 2557, 2565, 165 L Ed 2d 409 (2006), the Supreme Court recently reiterated its adherence to the structural error principle in the context of the Sixth Amendment right to counsel. The inquiry involves two questions: (1) Was the proceeding for which counsel was denied a "critical stage" during which the defendant was entitled to counsel under the

Sixth Amendment? (2) If so, was there a *complete* denial of counsel during that critical stage? *United States v. Cronic*, 466 US at 659.

The first determination whether a stage of the proceeding is "critical" depends upon "whether potential substantial prejudice to defendant's rights inheres in the * * * confrontation and the ability of counsel to help avoid that prejudice." *United States v. Wade*, 388 US 218, 227, 87 S Ct 1926, 18 L Ed 2d 1149 (1967). Clearly, that portion of the evidentiary trial during which the state presents its case-in-chief is such a "critical stage."

The second inquiry is whether the denial of counsel was "complete." In the state's view, because defendant had full representation during *voir dire* and opening statements, standby counsel during the first day of trial, and full representation during the remainder of trial, the denial of counsel was not "complete." We agree with the state. Although the role of standby counsel can be merely advisory and less than full representation, in this case, Hendershott played a significant role in defendant's defense. He selected the jury, gave opening and closing arguments, assisted defendant during the first day of testimony, and assumed full responsibility thereafter during two more days of trial. For that reason, we conclude that the denial of counsel in this case was not structural error and that a harmless error analysis applies.

The final question, then, is whether any error in allowing defendant to proceed *pro se* without advising him of the risks of self-representation was harmless. That depends, in turn, on whether there is little likelihood, *State v. Hansen*, 304 Or 169, 180, 743 P2d 157 (1987), or no reasonable doubt, *Rose v. Clark*, 478 US at 576, that defendant's lack of full representation during the first portion of trial testimony affected the verdict. *State v. Walton*, 311 Or 223, 231, 809 P2d 81 (1991).

We have addressed the partial denial of counsel in two cases. In *State v. Cole*, 135 Or App 643, 900 P2d 517 (1995), *rev'd*, 323 Or 30, 912 P2d 907 (1996), the defendant was uncounseled at a hearing on a motion to suppress, but the court appointed counsel for trial. We concluded that the trial court's error in accepting an invalid waiver of counsel

was harmless under both state and federal constitutional standards because, given the circumstances in that case, there was little, if any, likelihood that the court's error in accepting the defendant's waiver of counsel and the defendant's lack of representation at the motion to suppress hearing affected the outcome of the suppression hearing and the defendant's consequent conviction. *Id.* at 650-51. On review, the Supreme Court reversed, concluding that it could not say that the error was harmless, because it was not possible to determine what the outcome of the suppression motion would have been had the defendant been represented during the hearing. 323 Or at 36.

In *State v. Richardson*, 159 Or App 592, 978 P2d 435, *rev den*, 329 Or 479 (1999), we extended the Supreme Court's harmless error reasoning to nonevidentiary pretrial motions, including motions to quash and a motion for a bill of particulars. In holding that the trial court's failure to fully warn the defendant of the risks of self-representation was not harmless, we reasoned that we were unable to determine on the record before us whether the development and disposition of the defendant's pretrial motions could have been different if the defendant had been represented at that stage of the proceeding. *Id.* at 603.

Here, in contrast to *Richardson* and *Cole*, based on the trial record, we are able to conclude that the outcome of trial would not have been different had defendant been fully represented by Hendershott during the first evidentiary portion of trial. Hendershott selected the jury and made the opening and closing arguments. He was present during the two and one-half hour period during which defendant acted *pro se* and the state put on five of its witnesses, and he and defendant conferred frequently during that time. Defendant conducted appropriate cross-examination. The following day, Hendershott cross-examined the victim and represented defendant for the balance of the trial, during which time he could have remedied any shortcomings in defendant's self-representation. We conclude that, under both the little likelihood and reasonable doubt standards, any error in allowing defendant to proceed *pro se* without advising him of the risks of self-representation was harmless and does not require reversal.

B. *Imposition of consecutive sentences*

Defendant contends that the trial court erred in imposing consecutive sentences on three of the six convictions because, under *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), the court was required to submit to a jury any findings that must be made to support the imposition of consecutive sentences. We rejected that argument in *State v. Tanner*, 210 Or App 70, 150 P3d 31 (2006).

C. *Less than unanimous verdict*

■ In supplemental assignments of error, defendant contends that the trial court erred in giving an instruction that the jury could convict him by nonunanimous verdict and entering judgment based on a nonunanimous verdict, because a 1934 amendment to Article I, section 11, of the Oregon Constitution, authorizing nonunanimous guilty verdicts in criminal trials violates Article XVII, section 1, of the Oregon Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. Defendant concedes that he did not preserve the issues, but argues that they constitute plain error. We agree with the state that, in light of the United States Supreme Court's opinion in *Apodaca v. Oregon*, 406 US 404, 92 S Ct 1628, 32 L Ed 2d 184 (1972), holding that the Sixth Amendment right to a jury trial does not require a unanimous verdict, the error is not plain.

Affirmed.