Argued and submitted November 25, 2003, reversed and remanded with
instructions to enter judgment of conviction for misdemeanor DUII
February 25, 2004

## STATE OF OREGON,
*Respondent,*

*v.*

## DEBORAH LYNN PROBST,
*Appellant.*

## CR00494; A115154

85 P3d 313

Anne Fujita Munsey, Deputy Defender, argued the cause for appellant. With her on the brief were David E. Groom, Acting Executive Director, and Jesse Wm. Barton, Chief Deputy Defender.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

## BREWER, J.

■    Defendant appeals her conviction for felony driving under the influence of intoxicants (DUII). ORS 813.010(5).[1] The charge was elevated to a felony because she had been convicted of misdemeanor DUII three times within the previous 10 years. Defendant filed a motion *in limine* to exclude one of the prior convictions, arguing that she had not validly waived her right to counsel in that case because there was no evidence that she adequately understood the risks of self-representation. The trial court concluded that her waiver was valid and denied the motion. After a stipulated facts trial, the court convicted defendant and sentenced her to 24 months' imprisonment. On appeal, defendant argues that the record does not support the court's conclusion that she waived the right to counsel with an adequate understanding of the risks of self-representation.[2] We reverse and remand.

In January 1994, defendant was charged in McMinnville Municipal Court with DUII. She entered into a diversion agreement pursuant to which she agreed to participate in an alcohol abuse treatment program. Defendant failed to complete the treatment program successfully. In January 1996, the municipal court scheduled a hearing to determine whether to terminate the diversion agreement. The court informed defendant by letter that, if she failed to appear at the hearing, the diversion agreement would be terminated and the matter set for trial. Defendant failed to appear, so the court terminated her diversion and set the case for trial on April 8, 1996.

On March 14, 1996, defendant again was charged with DUII, this time in Yamhill County District Court. On

---

[1] ORS 813.010(5) provides, in part:

"Driving while under the influence of intoxicants is a Class C felony if the defendant has been convicted of driving while under the influence of intoxicants * * * at least three times in the 10 years prior to the date of the current offense and the current offense was committed in a motor vehicle."

[2] Defendant also argues that the trial court erred in finding that she knew that she had the right to counsel and that she waived that right. In a separate assignment of error, she contends that the court erred in taking judicial notice of the fact that she was aware of the risks of self-representation. Because defendant raises those arguments for the first time on appeal, we do not address them. ORAP 5.45.

March 15, defendant appeared before the district court and, at her request, the court appointed counsel for her. On the same day, her counsel requested discovery from the district attorney. The district attorney complied with that request, and the case was set for trial on May 1, 1996.

On April 8, 1996, defendant filed a petition to enter a guilty plea (the plea petition) in the municipal court case. The plea petition included the following statements:

"2. I wish to plead **GUILTY** to the charge of **DRIVING A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF INTOXICANT LIQUOR OR DRUGS.**

"* * * * *

"7. **I OFFER MY PLEA OF GUILTY FREELY AND VOLUNTARILY AND OF MY OWN ACCORD AND WITH FULL UNDERSTANDING OF ALL MATTERS SET FORTH IN THE COMPLAINT IN THIS PETITION.**

"8. **I ALSO WAIVE MY RIGHT TO AN ATTORNEY.**"

(Boldface in original.) The municipal court accepted defendant's guilty plea and entered a conviction for misdemeanor DUII.

On May 1, 1996, the district court convicted defendant of misdemeanor DUII in the district court action. In 1999, defendant was convicted of misdemeanor DUII for a third time, this time in Yamhill County Circuit Court.

In September 2000, defendant was charged in this case with a fourth DUII offense. The offense was charged as a felony based on defendant's three previous convictions for misdemeanor DUII. Defendant filed a motion *in limine* challenging the use of the municipal court conviction for that purpose. She argued that the state could not establish that she had validly waived her right to counsel in that case.

The trial court held an evidentiary hearing on the motion. The state introduced the plea petition from the municipal court case into evidence, as well as evidence showing that defendant was represented by counsel in the district

court case and that her counsel had requested and received discovery from the state. In addition, the state called the municipal court administrator, Bennett, as a witness. Bennett testified that she remembered the April 8, 1996, hearing in which defendant had pleaded guilty in the municipal court case. Bennett stated that, even though defendant had appeared on April 8 without an attorney, the municipal court previously had granted her a continuance so that she could obtain counsel. The state asked Bennett about the municipal court's general practice when a defendant sought to enter an uncounseled guilty plea:

"[PROSECUTOR]: To clarify, the judge would give a warning to the person before an uncounseled plea of guilty?

"[WITNESS]: Correct.

"[PROSECUTOR]: And that warning was along the lines of the value of getting an attorney and why they may want to consider having an attorney?

"[DEFENDANT'S COUNSEL]: Objection, leading.

"THE COURT: Sustained.

"[PROSECUTOR]: What, if anything, was the warning he gave?

"[WITNESS]: In this particular case, I was in the courtroom, and I do remember how the case was handled merely because this was the third time that she was brought in. And in this case, the judge had told her that— that she could seek counsel, and that she had the right to counsel before she entered her plea. And in this case, she entered her plea.

"* * * * *

"THE COURT: Do you recall if the judge cautioned her at all about the hazards of proceeding without an attorney?

"[WITNESS]: When he had brought her up, he had told her that she was here for a hearing to revoke her diversion, and that it would become a conviction. And that upon her entering this plea, that this was what precisely could happen, like the $5,000 fine. He read actually off of the guilty plea form. And then he told her that she had the right to an attorney before she entered a plea."

The prosecutor argued that the plea petition showed that defendant voluntarily had waived her right to counsel. He also noted that defendant had counsel in the pending district court case, emphasizing that

> "[d]iscovery was made [and] pretrial conferences were had all before the date of her plea on the April 8 DUII. She had the benefit of counsel in another case. She therefore can be presumed to understand the benefits of counsel and to know what an attorney could do for her and to have specifically made the decision to waive it in this case."

Defendant countered that there was no evidence that her attorney in the district court case had discussed with her the benefits of counsel or that the district court had informed her about the risks of self-representation. However, defendant offered no evidence that she did not understand the risks of self-representation or that she did not knowingly waive her right to counsel in the municipal court case.

The trial court found that defendant knew that she had the right to counsel when she pleaded guilty in the municipal court case. With respect to the waiver issue, the court stated:

> "I think I could fairly say that I would probably grant this motion but for Exhibit Number 3.
>
> "* * * * *
>
> "The record on the hazards of proceeding without an attorney is a little weak here, but the record on the other side of the coin, I think, can be fairly inferred. And that is that the defendant had some knowledge of the benefits of having an attorney by the fact that she had an attorney who was actively involved in her [1996 district court] case at the time she elected to waive her right to an attorney in the Municipal Court."

The trial court concluded that, under the totality of the circumstances, defendant knowingly waived her right to counsel in the municipal court case. It therefore denied defendant's motion *in limine*. After a stipulated facts trial, the court convicted defendant of felony DUII.[3]

---

[3] Defendant stipulated to the existence of the municipal court conviction, subject to her argument that the conviction is invalid.

■ Defendant appeals, assigning error to the trial court's use of the municipal court conviction to support the elevation of her offense to a felony. Defendant asserts that the use of the municipal court conviction violated her right to counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I, section 11, of the Oregon Constitution.

■■ A defendant may challenge the use of a prior conviction in a subsequent prosecution on the ground that the prior conviction was obtained while the defendant was not represented by counsel and that the defendant did not validly waive the right to counsel. *State v. Riggins*, 180 Or App 525, 531, 44 P3d 615 (2002). In *State v. Grenvik*, 291 Or 99, 102, 628 P2d 1195 (1981), the Oregon Supreme Court held that a valid waiver of counsel will not be presumed from a silent record. *See also State v. Meyrick*, 313 Or 125, 131-32, 831 P2d 666 (1992) (explaining that the rule in *Grenvik* stems from the fact that courts are "reluctant to find that fundamental constitutional rights have been waived"). The defendant "bears the burden of demonstrating *prima facie* that the conviction was uncounseled. If that is done, the burden is then on the state to demonstrate either that the defendant was, in fact, represented or that he [or she] had waived counsel." *State v. Holliday*, 110 Or App 426, 428, 824 P2d 1148, *rev den*, 313 Or 211 (1992). Here, it is undisputed that defendant was not represented by counsel in the municipal court case; the dispositive question therefore is whether she validly waived her right to counsel.

■ At the outset, the state urges us to reconsider the allocation of the burden of proof on the issue of waiver when a defendant collaterally attacks an uncounseled prior conviction. The state argues that a defendant should bear the burden of proving that she did not knowingly waive counsel. Such a rule would compel the inference, if the record of proceedings in the underlying case is silent on the issue, that the defendant validly waived counsel. Although the state's position is at odds with the Oregon Supreme Court's decision in *Grenvik*, it argues that *Grenvik*, a case decided under the Sixth Amendment, is itself inconsistent with the United States Supreme Court's later decision in *Parke v. Raley*, 506 US 20, 31, 113 S Ct 517, 121 L Ed 2d 391 (1992). In *Parke*, the

Court held that the "presumption of regularity that attaches to final judgments makes it appropriate to assign a burden of proof to the defendant" when the defendant challenges the validity of a prior conviction.

In *Grenvik*, the state sought to use an uncounseled prior conviction to elevate the defendant's second DUII offense from a Class A traffic infraction to a Class A misdemeanor. The defendant objected, arguing that the use of that conviction violated his Sixth Amendment right to counsel. The court relied on the United States Supreme Court's decision in *Burgett v. Texas,* 389 US 109, 88 S Ct 258, 19 L Ed 2d 319 (1967), for two propositions: (1) the constitutional validity of a prior conviction may be challenged in a subsequent prosecution in which the prior conviction is used to elevate the subsequent offense, and (2) where the record of a prior conviction is silent as to whether the defendant was represented by or waived counsel, it must be presumed that the defendant was not afforded his or her right to counsel. *Grenvik*, 291 Or at 101-02. Consistently with those principles, the court held that a prior conviction could not be used to elevate an offense unless the record of the prior conviction affirmatively showed that the defendant either was represented by counsel or had validly waived the right to counsel; that is, a valid waiver of counsel could not be presumed from a silent record. *Id.* at 102-03. Since 1981, Oregon courts have followed those principles.[4]

In 1992, the United States Supreme Court reconsidered *Burgett* in *Parke*, and it rejected the second proposition from *Burgett* on which the Oregon Supreme Court relied in *Grenvik*. In *Parke,* the defendant challenged a Kentucky statute that enhanced sentences for repeat felons. The defendant moved to suppress two prior convictions, arguing that, because the record failed to indicate whether the underlying guilty pleas were knowing and voluntary, they did not comply with *Boykin v. Alabama,* 395 US 238, 243, 89 S Ct 1709, 23 L Ed 2d 274 (1969) (holding that, on direct review, the

---

[4] *E.g., City of Pendleton v. Standerfer*, 297 Or 725, 730-32, 688 P2d 68 (1984); *Riggins*, 180 Or App at 531; *Holliday*, 110 Or App at 429; *State v. Manfredonia*, 105 Or App 537, 540, 805 P2d 738 (1991).

waiver of rights resulting from a guilty plea cannot be presumed from a silent record). Under the Kentucky statute, the state retained the ultimate burden of persuasion as to the validity of prior convictions, but a presumption of regularity attached to such convictions. When the state proved the existence of a prior conviction, the statute shifted to the defendant the burden to produce evidence that the conviction was invalid. If the defendant carried that burden, the state had to prove beyond a reasonable doubt that the conviction was valid.

In upholding the Kentucky statute, the Court held that *"Boykin* does not prohibit a state court from presuming, at least initially, that a final judgment of conviction offered for purposes of sentence enhancement was validly obtained." *Parke,* 506 US at 30. The Court distinguished the context of the instant case, a collateral attack on a final judgment, from *Boykin,* which was a direct appeal from a conviction:

> "We see no tension between the Kentucky scheme and *Boykin. Boykin* involved direct review of a conviction allegedly based upon an uninformed guilty plea. Respondent, however, never appealed his earlier convictions. They became final years ago, and he now seeks to revisit the question of their validity in a separate recidivism proceeding. To import *Boykin's* presumption of invalidity into this very different context would, in our view, improperly ignore another presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights."

*Parke,* 506 US at 29. The Court noted that, when it decided *Burgett,* "state criminal defendants' federal constitutional right to counsel had not yet been recognized, and so it was reasonable to presume that the defendant had not waived a right he did not possess." *Id.* at 31. Because the right to counsel was well established when the court decided *Parke,* however, the Court held that the state could rely upon the presumption of regularity that generally attaches to final judgments of conviction. The defendant in *Parke* also challenged the Kentucky statute on the ground that it assigned a burden of production to criminal defendants. The Court

rejected that argument, too, holding that, "even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant." *Id.*

After *Parke* was decided, a number of jurisdictions adopted the presumption of regularity for prior convictions used to enhance sentences or as elements of a crime. For example, in *Massachusetts v. Lopez,* 426 Mass 657, 664-65, 690 NE 2d 809, 814 (1998), the Massachusetts Supreme Judicial Court stated:

> "Many other States have specifically relied on the *Parke* decision to reject collateral challenges to long-closed convictions by plea where sentencing enhancement is involved. We conclude that a collateral challenge, like the defendant's, to a prior conviction by guilty plea, if the challenge is to advance at all, must be accompanied by sufficient credible and reliable evidence to rebut a presumption that the prior conviction was valid. If a defendant meets this burden, then an evidentiary hearing may be warranted at which the burden will be on the Commonwealth to show that the defendant's plea proceedings were conducted in a way that protected his constitutional rights."

The Virginia Court of Appeals addressed the same issue in *Harris v. Virginia,* 26 Va App 794, 803-04, 497 SE2d 165, 169-70 (1998):

> "When sentence enhancement is an issue, the Commonwealth has the burden of proving the existence of a defendant's prior, valid convictions, and it is assisted with this burden by the 'presumption of regularity.' Because every final judgment of a court of competent jurisdiction is presumed 'to have been rightly done,' a 'final' criminal conviction is entitled to a 'presumption of regularity' when challenged collaterally, even on the ground that it was constitutionally invalid. Thus, if the Commonwealth offers evidence sufficient to prove the existence of a defendant's prior criminal conviction, a presumption arises that the prior conviction was obtained in compliance with the defendant's right to counsel under the Sixth Amendment."[5]

---

[5] Many other states also have adopted the "burden shifting" holding of *Parke. See, e.g., Harris v. Georgia,* 238 Ga App 452, 453, 519 SE2d 243, 244 (1999); *Idaho*

An argument can be made that, in light of *Parke*, the reasoning in *Grenvik* is now outdated. At the time *Grenvik* was decided, it was entirely possible that a prior Oregon conviction had resulted from a proceeding in which the defendant neither had counsel nor validly had waived the right to counsel. However, Oregon law—including statutes and decisional law—has now protected the constitutional right to counsel for many years and, today, defendants in courts throughout the state, including municipal courts, routinely are advised of the right to counsel and the dangers of self-representation. There is every reason to believe that the trial courts of this state regularly follow applicable statutes and the directives of the Supreme Court in ensuring that the right to counsel is adequately protected. Thus, the rationale for excluding prior convictions from the presumption of regularity that generally attaches to final judgments arguably no longer is sound. A new approach, consistent with *Parke*, would continue to impose on the state the burden of proving that a prior conviction is constitutionally valid where there is *prima facie* evidence in the record that the defendant did not validly waive his or her right to counsel. However, where, as here, no such evidence exists, the presumption of validity logically would prevail.

■    Two considerations constrain us from adopting such a rule, though. First, although the United States Supreme Court has held that state courts may not impose restrictions under federal constitutional law that that court specifically has refrained from imposing, *Oregon v. Hass*, 420 US 714, 95 S Ct 1215, 43 L Ed 2d 570 (1975), the prerogative to overrule an Oregon Supreme Court decision belongs to that court, not to us. *See State v. Williams*, 17 Or App 513, 526, 522 P2d 1213 (1974) (stating that "when the Oregon Supreme Court's

---

*v. Beloit*, 123 Idaho 36, 37, 844 P2d 18, 19 (1992); *Lingler v. Indiana*, 644 NE2d 131, 132 (Ind 1994); *Kansas v. Patterson*, 262 Kan 481, 939 P2d 909, 915 (1997); *Louisiana v. Shelton*, 621 So 2d 769, 779-80 (La 1993); *Michigan v. Carpentier*, 446 Mich 19, 37, 521 NW2d 195, 203 (1994); *Montana v. Perry*, 283 Mont 34, 37, 938 P2d 1325, 1327 (1997); *North Carolina v. Stafford*, 114 NC App 101, 103, 440 SE2d 846, 846-47 (1994); *Lykken v. Class*, 561 NW2d 302, 304 (SD 1997); *Blankenship v. Tennessee*, 858 SW2d 897, 902-03 n 5 (Tenn 1993); *Tatum v. Texas*, 846 SW2d 324, 327-28 n 5 (Tex Crim App 1993); *James v. Virginia*, 18 Va App 746, 751, 446 SE2d 900, 903-04 (1994); *Vermont v. Porter*, 164 Vt 515, 516-21, 671 A2d 1280, 1281-84 (1996).

last word on an issue is more favorable to a criminal defendant than the United States Supreme Court's last word, we have made it our practice to follow the last word of the Oregon Supreme Court, leaving to that court the decision about whether to adopt the less favorable position adopted by the United States Supreme Court"). Second, *Grenvik*—a Sixth Amendment case—did not address whether Article I, section 11, of the Oregon Constitution precludes applying a presumption of regularity to prior convictions in cases where the record does not affirmatively demonstrate that the defendant validly waived his or her right to counsel. Unlike the defendant in *Grenvik*, defendant here has raised that state constitutional issue. It is not certain that the Oregon Supreme Court would adopt the *Parke* rule for purposes of Article I, section 11.[6] *See, e.g., DeAngelo v. Schiedler*, 306 Or 91, 95, 757 P2d 1355 (1988) (declining to reach Sixth Amendment claim where Oregon Constitution provided protection sought by post-conviction petitioner); *cf. State v. Rogers*, 313 Or 356, 363, 836 P2d 1308 (1992), *cert den*, 507 US 974 (1993) (presuming same analysis of venue issue under Article I, section 11, and Sixth Amendment because defendant did not suggest different analysis under state and federal constitutions). In any event, because we are bound by *Grenvik*, our further conjecture on the subject would serve no useful purpose.

For the foregoing reasons, we follow *Grenvik*, which requires us to consider, without a presumption of regularity, whether the evidence in the record supports the trial court's

---

[6] Both the Sixth Amendment and Article I, section 11, guarantee the right to counsel in any "criminal prosecution." In *Meyrick*, 313 Or at 131-32, the defendant challenged on direct appeal the validity of his waiver of counsel under both the Sixth Amendment and Article I, section 11. Because the court cited *Grenvik* in its Article I, section 11, analysis, it arguably concluded that the waiver analysis under the Sixth Amendment was not meaningfully different from the analysis under Article I, section 11. With respect to misdemeanor prosecutions, however, the Sixth Amendment right to counsel extends only to cases in which actual imprisonment is imposed. *Scott v. Illinois*, 440 US 367, 374, 99 S Ct 1158, 59 L Ed 2d 383 (1979). Article I, section 11, is not so limited. *Standerfer*, 297 Or at 729; *Brown v. Multnomah County Dist. Ct.*, 280 Or 95, 570 P2d 52 (1977) (holding that the meaning of "criminal prosecution" is not confined to those misdemeanor cases in which imprisonment is actually or even potentially to be imposed). That difference alone cautions against drawing a hasty conclusion about the portability of Sixth Amendment case law to an Article I, section 11, analysis of the waiver issue.

determination that defendant validly waived counsel in the municipal court case.[7] We turn to the parties' arguments on that issue.

■■■■ A waiver of the right to counsel is valid only if the defendant understands that (1) he or she has the right to counsel (appointed counsel if the defendant is indigent), and (2) there are dangers inherent in self-representation. *Meyrick*, 313 Or at 132-33. The state can establish a valid waiver by showing that the trial court engaged the defendant in a colloquy that verified the defendant's understanding of the risks of self-representation. *State v. Jackson*, 172 Or App 414, 422, 19 P3d 925 (2001). The court need not have delivered a specific catechism or imparted any particular piece of information. *Id.* at 423. For example, knowledge of the risks of self-representation can be inferred from an explicit explanation of some of the benefits of having an attorney. *State v. Howard*, 172 Or App 546, 554, 19 P3d 369, *rev den*, 332 Or 305 (2001); *see also Jones v. Maass*, 144 Or App 574, 578, 928 P2d 351 (1996), *rev den*, 326 Or 464 (1998) (finding a valid waiver in part because, although the defendant discharged his attorney before trial, counsel had explained to him how helpful an attorney could be). Where such a colloquy is not found in the record, the state nevertheless can show, under the totality of the circumstances, that the defendant had the

---

[7] We acknowledge the general preference of our courts for the resolution of issues such as the one before us on nonconstitutional grounds. *See, e.g., Leo v. Keisling*, 327 Or 556, 562, 964 P2d 1023 (1998) ("[I]t is well established that this court ordinarily does not decide constitutional issues if there is an adequate sub-constitutional basis for decision."). However, we have found no statute, and the parties have cited none, that controls the matter.

We have considered ORS 813.328, enacted by the legislature in 1999. Or Laws 1999, ch 1049, § 4. That statute provides, in part, that, in a felony DUII prosecution, the validity of a prior conviction "shall be determined prior to trial by the court." However, it does not address the particular issue at hand. We also have considered ORS 813.326, enacted as part of the same bill. Or Laws 1999, ch 1049, § 5. ORS 813.326(1) provides, in part, that, "[i]n a prosecution for felony driving while under the influence of intoxicants under ORS 813.010, the state shall plead the prior convictions and shall prove the prior convictions unless the defendant stipulates to that fact prior to trial." That statute imposes on the state the burden to "prove the prior convictions," but neither the text nor context of the statute sheds any light on the specific question whether, in the absence of evidence to the contrary, the state must prove that an uncounseled guilty plea in the prior case was supported by a valid waiver of counsel.

requisite understanding. *Jackson*, 172 Or App at 423. We will affirm the trial court's factual findings on issues related to waiver if they are supported by any evidence in the record. *Id.* at 421.

Here, the trial court based its conclusion that defendant validly waived counsel in the municipal court case solely on the fact that she was represented by counsel in the district court case. The trial court declined to infer a valid waiver from evidence relating to the conduct of the municipal court case. On appeal, defendant contends that the trial court erred in basing its conclusion on the fact that she had counsel in the district court case. The state responds that the trial court reasonably inferred from that fact that defendant understood the risks of self-representation. It further argues that the court's conclusion was also supported by evidence relating to the conduct of the municipal court case, specifically, Bennett's testimony regarding the municipal court's general practice of warning defendants before accepting uncounseled pleas; her testimony that the court informed defendant of the potential consequences of a guilty plea; and her testimony that the municipal court granted defendant a continuance for the purpose of obtaining counsel.

We agree with the trial court that the described evidence relating to the conduct of the municipal court case was insufficient to support an inference that defendant understood the risks of self-representation in the municipal court case and that she therefore validly waived her right to counsel. Unlike the trial court, however, we conclude that evidence that defendant was represented by counsel in the contemporaneous district court case was also insufficient to support that inference and conclusion. We address those points in turn.

The state first argues that it reasonably can be inferred that the municipal court warned defendant about the risks of self-representation. The state points to Bennett's testimony that the municipal court followed a general practice of warning defendants before accepting uncounseled guilty pleas. Although Bennett testified about the court's general practice, when pressed for specifics about defendant's case, she stated that the court informed defendant

that she had the right to have an attorney and warned her about the consequences of pleading guilty. She said nothing about an explanation of the risks of self-representation. Rather, she stated that the court "read * * * off of the guilty plea form." That form contained no information about the risks of self-representation. Bennett's testimony thus did not support an inference that the municipal court judge warned defendant about those risks.

The state next argues that, because Bennett testified that the municipal court judge told defendant "precisely" what could happen if she pleaded guilty, it reasonably can be inferred that defendant understood the gravity of her plea. That understanding, the state urges, supports the inference that defendant understood the risks of self-representation. However, a warning about the consequences of pleading guilty is not the same as a warning about the risks of entering a plea without the benefit of counsel. *See State v. Carter*, 107 Or App 48, 52, 810 P2d 872 (1991) (holding that waiver of counsel was invalid because the defendant was not informed of the pitfalls of defending himself, even though the court informed him of the possible punishments). The state argues that, in *Howard*, we inferred that the defendant had the requisite understanding in part because the trial court had warned the defendant about the potential sentencing consequences if he were to be convicted. 172 Or App at 554. Although we mentioned that warning as a factor in our analysis, we also discussed at length the colloquy in which the trial court explained to the defendant the functions that an attorney could perform, including negotiating with the district attorney. *Id.* We concluded that "[t]he trial court's colloquy demonstrates that defendant understood the risks of self-representation." *Id.* at 554-55. Here, the fact that the municipal court explained the consequences of conviction does not, by itself, justify the inference that the defendant understood the risks of proceeding without counsel. *Carter*, 107 Or App at 528.

The state next contends that the fact that the municipal court granted defendant a continuance so that she could obtain an attorney supports the inference that defendant wanted an attorney and knew the dangers of self-representation. Assuming, without deciding, that defendant's request

for a continuance showed that she was concerned about the dangers of representing herself,

> "a defendant's abstract knowledge that there may be risks or disadvantages of self-representation, without any appreciation of what those risks might be, is insufficient. Rather, 'understanding' for *Meyrick* purposes means more than merely being generally aware that there may be unspecified risks but less than knowing all the potential risks. 'Understanding' under *Meyrick* means that a defendant, in the totality of the circumstances, substantially appreciates the material risks of self-representation in his or her case."

*Jackson*, 172 Or App at 423. Defendant's request for a continuance furnished no basis to infer that she was more than merely "generally aware that there may be unspecified risks."

■ We turn to the evidence on which the trial court relied in finding that defendant understood the risks of self-representation. Again, the court inferred that, because defendant was represented by counsel in the district court case, she understood the benefits of having an attorney and, therefore, she also understood the risks of self-representation. The record shows that counsel was appointed by the court in defendant's district court case three weeks before defendant entered her guilty plea in the municipal court case. The state correctly notes that a defendant's consultation with an attorney in another case can support the inference that the defendant understood the risks of self-representation. However, in cases where a waiver was held to be valid in part on that ground, other factors bolstered the conclusion. For example, in *Meyrick*, the Supreme Court affirmed the defendant's conviction in part because he had consulted with counsel before trial. 313 Or at 135-36. But the defendant in that case told the trial court that the attorney "had warned him that his chances of winning his case without counsel 'were akin to his chances of handling nuclear materials with his bare hands and not being affected.' Defendant added, 'Although [that advice is] sobering, I've chosen to disregard [the attorney's] advice and defend myself.' " *Id.* at 135 (brackets in *Meyrick*).

In *State v. Massey*, 160 Or App 197, 199, 981 P2d 352 (1999), the defendant had been represented by several different attorneys, the last of whom was permitted to withdraw

on the day of trial. We reversed the defendant's conviction and remanded for a new trial, stating that his "prior representation does not establish that anyone told defendant about the risks of representing himself." *Id.* at 200. Similarly, in *State v. Kramer*, 152 Or App 519, 521, 954 P2d 855 (1998), the defendant had consulted with an attorney before deciding to represent himself. The state argued that we could infer that the defendant's waiver was valid from that fact and because he had "heard the court comment 'about the advisability of being represented by counsel' to another criminal defendant the day he was arraigned * * *." *Id.* at 523. We rejected the state's argument:

> "We find nothing in the record from which it can be inferred that defendant was ever warned of the dangers of self-representation. Neither the details of defendant's prior communication with his attorney nor the dialogue between the court and another criminal defendant at the arraignment are part of this record. The state asks us to make too many inferences here, given the paucity of even a suggestion in the record that defendant was warned, let alone understood, the dangers of self-representation. The trial court erred in accepting defendant's waiver of counsel."

*Id.* at 524.

As in *Kramer*, the state here asks us to make too many inferences from a scant record. Assuming that it is reasonable to infer that defendant actually conferred with her district court counsel before pleading guilty in the municipal court case, there is no evidence that they discussed defendant's self-representation or anything else related to her municipal court case. Because nothing else in the record established that defendant adequately appreciated the risks of proceeding without counsel when she entered an uncounseled guilty plea in the municipal court case, it follows that the trial court erred in concluding that she validly waived counsel in that case and in denying her motion to exclude evidence of that conviction.

■ The task remains to determine the proper disposition of this case. Defendant asks us to remand for a new trial for misdemeanor DUII. She relies on *Grenvik*, where the court stated, "We cannot conclude that the jury was not influenced

by evidence of a prior conviction of a similar offense which was improperly before them." 291 Or at 103. The state contends that we can safely conclude that the trial court in this case was not influenced by the evidence of the predicate convictions and that the evidence that defendant committed DUII was overwhelming and undisputed. We agree. Defendant stipulated to all of the facts that led to her conviction, subject only to her objection to the validity of the municipal court conviction. We conclude that, even if the trial court had excluded the evidence of that conviction, it would have found defendant guilty of misdemeanor DUII.

Reversed and remanded with instructions to enter judgment of conviction for misdemeanor DUII.