Submitted on record and briefs March 30, affirmed May 30, 2007

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# JUSTIN BRENT FORREST,
*Defendant-Appellant.*

Union County Circuit Court
F11363; A126154

159 P3d 1286

Peter Ozanne, Executive Director, Peter Gartlan, Chief Defender, and Jennelle Meeks Barton, Deputy Defender, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Doug M. Petrina, Assistant Attorney General, filed the brief for respondent.

Before Edmonds, Presiding Judge, and Wollheim and Sercombe,* Judges.

EDMONDS, P. J.

---

* Sercombe, J., *vice* Deits, J. pro tempore.

## EDMONDS, P. J.

Defendant appeals from a conviction for felony driving while under the influence of intoxicants (DUII). ORS 813.010(5). The statute under which defendant was convicted affords felony status to the offense if "the defendant has been convicted of driving while under the influence of intoxicants * * * at least three times in the 10 years prior to the date of the current offense[.]" On appeal, defendant argues initially that the trial court erred when it denied his motion to exclude evidence of a prior conviction in 2003 for DUII because his plea of guilty to that charge occurred without a valid waiver of his right to counsel. Without evidence of that conviction, the requirement that defendant be convicted of DUII three times in the 10 years prior to the date of the current offense cannot be satisfied. Second, defendant argues that the trial court erred when it used prior DUII convictions to prove elements of felony DUII and then used them a second time to establish defendant's criminal history score. We affirm on both assignments of error for the reasons that follow.

The threshold issue is whether defendant was adequately informed by the court of the risks of self-representation before he entered a plea of guilty in 2003. In the 2003 case, defendant appeared at a release hearing on October 6, in which he indicated to the court that he wanted to go ahead and enter a plea of guilty to the charge. The court deferred defendant's request, stating, "Well, before I do that, I would need a waiver of attorney form filled out and signed, but I don't have time to do that right now[.]" On October 8, defendant appeared again before the court and indicated that he desired to waive his right to counsel and entered a plea of guilty. As part of that process, defendant executed a written waiver of counsel. The waiver provides:

"1.   I am aware that I am charged with DUII and the possible maximum sentence I could receive is 1 YR and a fine of $5,000.

"2.   I have a right to an attorney, and if I do not have enough money to hire an attorney, I have the right to a court appointed attorney at no cost to me at this time; that

the Court can appoint an attorney to represent me, without charge to me at this time.

"3.   I know that an attorney would be able to: investigate; obtain evidence; research the law; negotiate; subpoena witnesses; cross examine witnesses; argue on my behalf; and represent me if I took my case to trial. In other words, an attorney could present my case to a jury or judge.

"4.   Even though I am aware of the pitfalls that may befall me if I try to defend myself and of the possible advantages that I may be giving up by not using an attorney in this matter, I am voluntarily choosing to give up my right to an attorney.

"5.   By signature below, I INTENTIONALLY give up my right to any attorney."

(Uppercase in original.) Defendant initialed each of the statements on the "waiver" form and signed the bottom of the form.

The trial court also informed defendant of the following at the hearing on October 8:

"All right. So, let me go over your rights real quick with you. Mr. Forrest, you understand you have the right to...to remain silent, the right to a free attorney, right to a jury trial. The state has to prove beyond a reasonable doubt DUII. You have the right to subpoena witnesses to that trial. They have to be here, even if they didn't want to be here. You have a right to cross-examine the state's witnesses. You could testify yourself if you wanted to. Understand that? If you decided not to testify that couldn't be held against you. DUI [*sic*] is a Class A Misdemeanor with a maximum fine of five thousand dollars. Minimum fine for the first offense, is a thousand dollars. Maximum...jail, a year in the county jail. A minimum jail...two days in jail. If it's your first offense, you lose your license for a year. A second offense within five years, you lose your license for three years. Do you have any questions about the penalties?"

Defendant answered in the negative, told the court he was ready to enter a plea, and entered a plea of guilty.

■      On appeal, defendant argues that the trial court should not have admitted the evidence of the 2003 conviction because the state failed to prove that his plea was made with

the knowledge and the understanding of the risks of self-representation, *i.e.*, that "he was not advised on the record of the dangers of proceeding without counsel and that the waiver of counsel form that he signed did not specify any 'pitfalls' of proceeding without counsel." In *State v. Gaino*, 210 Or App 107, 149 P3d 1229 (2006), we considered a similar issue. The defendant, appearing *pro se*, filed a petition to extend the duration of her diversion agreement and, as required by law, concurrently signed and filed a petition to enter a plea of guilty to the underlying DUII charge. The plea petition acknowledged her right to hire an attorney or have one appointed to represent her, and it provided warnings of the risks and disadvantages of entering a guilty plea. However, the plea petition did not include any specific warnings about the risks of self-representation. Also, the trial court did not specifically explain the risks of proceeding without counsel to the defendant. On appeal, the defendant argued that the trial court erred in allowing her to proceed without counsel without first determining whether her waiver of counsel was made with an understanding of the risks of self-representation.

In holding that the state had not demonstrated that the defendant was aware of the risks of self-representation and in reversing her conviction, we explained:

"First, a defendant has a right under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution to be represented by counsel at critical stages of a criminal proceeding. *See, e.g., State v. Sparklin*, 296 Or 85, 94-95, 672 P2d 1182 (1983) ('Any pretrial adversarial contact of the state and a defendant at which some benefit of counsel would be lost if counsel is not present, that is, at which the state's case may be enhanced or the defense impaired due to the absence of counsel, may be considered a critical stage of the prosecution at which defendant has a right to the presence of counsel.' (Internal citation and quotation marks omitted.)). Second, a criminal defendant may waive the right to be represented by counsel in a criminal proceeding, but the waiver 'must be voluntarily and intelligently made.' *State v. Meyrick*, 313 Or 125, 132, 831 P2d 666 (1992). The 'voluntary' component refers to an intentional act that is not induced through coercion. *Id.* at 132-33 n 8. The 'intelligently' component 'refers to a

defendant's knowledge and *understanding* of the right to counsel.' *Id.* (emphasis added). A defendant is said to understand his right to counsel if, considering the 'totality of the circumstances,' the record reflects that he or she 'substantially appreciates the material risks of self-representation.' *State v. Jackson*, 172 Or App 414, 423, 19 P3d 925 (2001).

"\* \* \* \* \*

"The next question is whether defendant intelligently and voluntarily waived her right to counsel at that phase in the criminal prosecution. *Meyrick*, 313 Or at 132. Defendant asserts that the trial court failed to determine whether she 'intelligently' waived the right to counsel—that is, that she understood the risks of proceeding without counsel— and that nothing in the record establishes that she had such knowledge.

"A record can reflect that the defendant sufficiently understands the material risks of self-representation in a number of ways. For example, in *Meyrick*, the court held that the defendant understood the risks of self-representation because the record established that he had discussed his case with an attorney, and the attorney had warned him 'that his chances of winning his case without counsel were akin to [the attorney's] chances of handling nuclear materials with his bare hands and not being affected.' *Meyrick*, 313 Or at 135 (internal quotation marks omitted). In addition to a defendant's prior interactions with attorneys, other relevant circumstances include the defendant's age, education, experience, and mental capacity. *See id.* at 132. The 'preferred means of assuring that the defendant understands the risks of self-representation' is '[a] colloquy on the record between the court and the defendant wherein the court, in some fashion, explains the risks of self-representation.' *Id.* at 133. Although no particular catechism is required, 'understanding' for *Meyrick* purposes means more than merely being generally aware that there may be unspecified risks but less than knowing all the potential risks. *Jackson*, 172 Or App at 423. As we explained in *State v. Probst*, 192 Or App 337, 349-50, 85 P3d 313 (2004), *vac'd on other grounds*, 339 Or 612, 124 P3d 1237 (2005), if the court does not engage in a colloquy to determine whether a defendant is aware of the risks of self-representation, then 'the state nevertheless can show, under the totality of the

circumstances, that the defendant had the requisite under-standing.' Thus, a defendant demonstrates *prima facie* error by showing that the trial court allowed him or her to proceed at a critical stage without an attorney and did not determine that he or she was aware of the risks of self-representation. The state may overcome that showing by establishing that the defendant was nonetheless aware of the risks of self-representation. *Id.*"

210 Or App at 112-15.

We apply the above principles to the facts of this case. Here, the trial court did not engage in a colloquy with defendant to determine whether defendant substantially appreciated the material risks of self-representation. The question becomes whether the state has overcome defendant's *prima facie* demonstration of error by showing that defendant was nonetheless aware of those risks.[1] In turn, the state relies on defendant's written waiver of his right to counsel and argues that it demonstrates that he substantially appreciated the risks of self-representation. In particular, the state focuses on the final two paragraphs of the form, in which defendant acknowledges what functions an attorney could perform on his behalf and that he is "aware of the pitfalls that may befall me if I try to defend myself and of the possible advantages that I may be giving up by not using an attorney in this matter[.]"[2] In addition, the state relies on our holding in *State v. Howard*, 172 Or App 546, 19 P3d 369, *rev den*, 332 Or 305 (2001), in support of its argument.

In *Howard*, the defendant argued that his waiver of counsel for purposes of trial was invalid because the trial court did not advise him of any of the pitfalls of self-represen-tation. We rejected that argument, observing,

"Given the trial court's detailed explanation of the serious-ness of the charge and its recital of defense tasks for which an attorney is especially qualified, the court's message

[1] Based on the analysis in *State v. Randant*, 341 Or 64, 136 P3d 1113 (2006), the state argues that the standard for an effective waiver of counsel is less strin-gent when a defendant waives counsel and enters a plea of guilty than when a defendant waives counsel but represents himself or herself at trial. We rejected that understanding of *Randant* in *Gaino*, 210 Or App at 113 n 2.

[2] In *Gaino*, the written plea petition did not include any specific warnings about the risks of self-representation, unlike the written waiver in this case.

could not have been much plainer. It was telling defendant in no uncertain terms that a trained attorney could bring particular skills to the defense that a *pro se* defendant generally does not have. A warning that affirms the benefits of representation by counsel casts doubt conversely on a defendant's comparative competence to represent himself. Those premises are two sides of the same coin."

*Howard*, 172 Or App at 554. The state concludes that our reasoning in *Howard* informs the issue in this case significantly because, "[b]y stating specific benefits of legal representation, the [waiver] form was also clearly telling the defendant that, if he did not have a lawyer, he would be disadvantaged because he would not have those benefits."

The state correctly recognizes, however, that in relying solely on the language in the written waiver as the basis for inferring a valid waiver, its argument implicates our holding in *State v. Jackson*, 172 Or App 414, 19 P3d 925 (2001). In *Jackson*, the state appealed after the trial court suppressed evidence of the defendant's prior DUII conviction on the ground that the defendant had not made an understanding waiver of the right to counsel. The trial court in that case determined that the waiver form executed by the defendant did not adequately describe the risks associated with self-representation. The form stated, in pertinent part,

"I understand there may be advantages to being counseled by an attorney and disadvantages by self-representation. I understand there may be defenses available to me of which an attorney could advise me."

At the hearing on the motion to suppress the evidence of the prior conviction, the defendant testified that the written form constituted the only information that he had received from the court about the pitfalls of self-representation.

On appeal, we affirmed the trial court's ruling, reasoning,

"On this barren record, the trial court did not err in excluding evidence of defendant's DUII conviction. The trial court could properly decline to infer from defendant's mere execution of the waiver forms that defendant did, in fact, sufficiently understand the risks of self-representation when he waived counsel in the DUII case. In particular, the

court could properly find that, given the generalized language of the written waiver, defendant's execution of those forms showed only that defendant knew, in some amorphous way, that there might be risks of self-representation, without any real understanding of what the particular risks might be."

*Jackson*, 172 Or App at 424-25.

We cautioned, however, in *Jackson*,

"In so concluding, we emphasize the limited scope of our holding. We do not imply that written waivers of counsel are necessarily insufficient or that such waivers, to be sufficient, must be coupled with some confirmatory oral colloquy. *Accord Meyrick*, 313 Or at 133 ([a] colloquy is [the] '*preferred* means of assuring that the defendant understand the risks of self-representation') (emphasis added). To the contrary, as our decisions have consistently stressed, the assessment of a defendant's understanding is to be based on the totality of the circumstances. Thus, depending on a defendant's experience or on the content of the written form—the extent to which it clearly and specifically identifies material risks of self-representation—knowing waivers may be inferred from execution of a written waiver."

172 Or App at 425.

In that light, we turn back to the circumstances in this case. Neither party offered any *testimony* regarding whether defendant substantially appreciated the risks of self-representation. Instead, the parties entered into what they characterized as a stipulated facts trial and offered into evidence the tape recordings of the 2003 proceedings and the written waiver. The parties also vigorously argued the issue to the trial court. During the prosecutor's oral arguments, he told the trial court that defendant had "15 convictions since 1998. He's had attorneys as near as I can tell in all of 'em except for maybe this one and one other one[.]" The prosecutor also told the court that defendant "had an attorney in a pending felony case which he pled guilty to just after this[,]" apparently referring to the 2003 plea hearing.[3] Ultimately,

---

[3] On appeal, defendant acknowledges the state's argument but argues that "there was no evidence in the record that defendant's contacts were enough to provide him with substantive instruction in the pitfalls of self-representation."

however, the trial court ruled that the language in the waiver form was sufficient by itself to apprise defendant of the risks of self-representation.

■ As we did in *Jackson*, 172 Or App at 421, we must engage in two distinct inquiries to resolve the issue before us: (1) did the trial court apply the correct legal standard and (2) is the trial court's factual determination supported by any evidence in the record? Our answer to the first query is in the affirmative. Although the trial court did not expressly define the standard that it applied, both counsel argued the import of *Jackson* and *Howard* to the court. Based on the arguments made to the trial court, we conclude that the trial court applied the correct legal standard to the facts before it.

The second issue is more difficult to resolve in light of the fact that the trial court did not make an explicit factual determination about whether defendant understood the risks of self-representation. Rather, it expressly ruled on the legal sufficiency of the form itself. However, under *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968), if findings are not made on all factual issues and there is evidence from which such facts could be decided in more than one way, we will presume that the factual issues were decided in a manner consistent with the trial court's ultimate conclusion. Here, defendant initialed each paragraph of the form and signed it at the bottom of the form. The trial court could have reasonably inferred that, by initialing each paragraph, defendant certified that he understood the contents of the waiver form. In other words, we presume that the court would not have reached its legal conclusion regarding the sufficiency of the waiver form without first finding implicitly that defendant understood its contents.

■■ It follows that the "totality of the circumstances" to determine whether defendant substantially appreciated the material risks of self-representation in this case consists of the contents of the waiver form. In that light, we are mindful of two principles that flow from the holding in *Meyrick*: (1) a valid waiver of the right to counsel does not require that a defendant appreciate every potential risk of self-representation, and (2) there is no particular catechism or formalistic

approach that must accompany the advice of the risks of self-representation for a valid waiver to occur. Here, the form advised defendant of a number of functions that an attorney could perform on his behalf in some detail. Moreover, the form alerted defendant that there could be "pitfalls" and "possible advantages that I may be giving up by not using an attorney in this matter." Defendant also certified that he was "voluntarily choosing to give up my right to an attorney" and that he was doing so "INTENTIONALLY." (Uppercase in original.) As we explained in *Howard*, the recital of defense tasks for which an attorney is especially qualified provides information in no uncertain terms that an attorney could bring particular skills to the defense that a *pro se* defendant lacks. The negative implication of such information is that proceeding without an attorney will subject the defendant to the risks of self-representation. We conclude for the above reasons that the contents of the waiver form sufficed to inform defendant of the risks of self-representation, and therefore there is evidence to support the implicit determination of the trial court that defendant appreciated the risks of proceeding without the advice of counsel and knowingly waived his right to counsel.

■ In his second assignment of error, defendant argues that the trial court violated statutory and double-jeopardy principles by using convictions that satisfied elements of the felony DUII charge to calculate his criminal history score at the time of sentencing. We rejected a similar argument in *State v. McCoin*, 190 Or App 532, 79 P3d 342 (2003), *rev den*, 336 Or 422 (2004), and adhere to our decision and reasoning in *McCoin* with regard to defendant's contention in this case.

Affirmed.