Submitted February 27, affirmed December 10, 2008, petition for review denied April 8, 2009 (346 Or 158)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEVEN CARLOS REYNOLDS,
*Defendant-Appellant.*

Curry County Circuit Court
05CR1096, 05CR1097;
A130813 (Control), A130936

198 P3d 432

Ingrid Swenson, Executive Director, Peter Gartlan, Chief Defender, and Jamesa J. Drake, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Michael R. Washington, Senior Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Ortega, Judge, and Carson, Senior Judge.

ORTEGA, J.

**ORTEGA, J.**

Defendant appeals judgments imposing punitive sanctions for 11 counts of contempt of court, ORS 33.045, and conviction for one count of telephonic harassment, ORS 166.090. He contends that his waiver of counsel was invalid because the trial court did not adequately inform him of the risks of self-representation and that, as a result, his waiver was not made "knowingly." We conclude that the trial court's colloquy with defendant, together with a signed waiver form, demonstrate that he knowingly waived counsel. Accordingly, we affirm the judgments imposing punitive sanctions of conviction.

Defendant was charged with contempt for willfully disobeying a restraining order by telephoning his former spouse (10 counts) and by attempting to intimidate her (one count). A second information charged defendant with four counts of telephonic harassment for causing his former spouse's telephone to ring, knowing that he had been forbidden from doing so.

At his arraignment, the court summarized the contents of each information and explained the maximum penalty as to each count. After summarizing the charges and penalties, the court informed defendant that he had the right to remain silent and "the right to an attorney, court appointed if necessary." The court asked defendant if he had any questions, and the following discussion took place:

"[DEFENDANT]: I do understand my rights, sir, and I'd like to explain some things here, too.

"THE COURT: Well, first, [defendant], we have to determine do you want an attorney to help you with these matters?

"[DEFENDANT]: Not at this moment, sir. I think maybe you can clear this up in a—in a second.

"THE COURT: Well, [defendant], you may be under a misconception. The only thing the judge does at arraignment is tell you what the charges are, advise you of your right to remain silent, and your right to counsel. I don't do any negotiations. Any explanation to me is not going to help you at all because [your former spouse] would certainly

have the right to be here to have her side of the story heard. That's called a trial. That trial doesn't take place this morning.

"[DEFENDANT]: Okay.

"THE COURT: So these are some fairly serious matters since there's so many charges, so do you want an attorney to help you with this case?

"[DEFENDANT]: I do. I do, Your Honor."

At a hearing a few days later, defendant appeared with an attorney who advocated for defendant's conditional release, pending trial, which the court denied. Defendant's next appearance was scheduled for two and one-half weeks later.

At the pretrial conference, which was accelerated at the request of defense counsel, defendant informed the court that he wanted to file some motions and represent himself:

"[DEFENSE COUNSEL]: Your Honor, I ask that [defendant] be brought over. He would like a new attorney appointed or [to] defend himself. I'm not sure exactly which he is preferring.

"DEFENDANT: May I speak, Your Honor?

"THE COURT: Yes.

"DEFENDANT: First off, I'd like to file some motions if possible. And, second off, I would like to defend myself in this matter.

"THE COURT: Okay, wait, wait.

"Mr. Spicer is your attorney. And, you're telling me at this point that you want to represent yourself?

"DEFENDANT: Correct, Your Honor.

"THE COURT: You understand the services—if you have an attorney they're going to—obviously, Mr. Spicer has met with you. He's going to file papers, paperwork that's necessary, motions and so forth and appear with you in court, negotiate on your behalf if that was appropriate and appear with you at all steps in the proceeding, whether it be a plea or whether it's a trial and so forth.

"So, you understand that?

"DEFENDANT: Correct, Your Honor. This won't go to trial.

"THE COURT: Wait.

"And, if you are not an attorney and you're representing yourself, you are at a disadvantage.

"Do you understand that?

"DEFENDANT: Correct, Your Honor.

"THE COURT: And, so is it your own free and voluntary decision at this time that you want to proceed on this matter representing yourself?

"DEFENDANT: Correct, Your Honor.

"THE COURT: Okay.

"I'm going to ask you to sign a piece of paper that—

"DEFENDANT: (Interposing) Can I file some motions at this time, Your Honor?

"THE COURT: Sign the paper first. Read it and sign it if that's what you want to do.

"Now, you have some motions you want to file?

"DEFENDANT: Yes, Your Honor."

The "paper" was a "Waiver of Counsel" form. Defendant signed the form, which included this statement:

"I, the Defendant in the above entitled criminal proceedings, having been fully informed of my constitutional rights, including my right to be represented by counsel, and [sic] am aware of the help a lawyer might be to me. I hereby knowingly waive (give up) my right to be represented by counsel and I do so freely and voluntarily without any threat, promise or other form of coercion."

The court set a date to hear defendant's motions, most of which were denied at the hearing. At trial on the contempt charges, the court found defendant guilty on all counts and imposed fines, probation, and jail time, although most of the jail time was suspended provided that defendant complied with the restraining order.

Defendant later agreed to plead guilty to one telephonic harassment charge in exchange for the state's agreement to drop the remaining harassment charges. Before accepting the plea, the trial court explained to defendant the maximum penalty for telephonic harassment and told him that, by pleading guilty, he was waiving his rights to remain silent and to have a jury trial. Upon defendant's acknowledgement that he understood, the court accepted his plea and sentenced him on that one count.

■      On appeal, defendant contends that the trial court erroneously allowed him to proceed to trial on the contempt charges and to plead guilty on the harassment charge without the assistance of counsel and without adequately advising him of the risks of self-representation. Defendant asserts that, for a waiver of counsel to be valid under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution,[1] the waiver must be made with knowledge and an understanding of the risks of proceeding without counsel. Defendant contends that, in its colloquy with him, the court made no mention of the risks of self-representation and, at best, only cursory reference to the ways that an attorney might help him. Moreover, defendant maintains that the record, though "devoid of any direct evidence about his education or mental capacity," suggests that he is unsophisticated in legal matters. Ultimately, he asserts, the record fails to demonstrate that his waiver was knowing and, therefore, valid.

Our analysis of defendant's argument follows the Supreme Court's opinion in *State v. Meyrick*, 313 Or 125, 831 P2d 666 (1992). In *Meyrick*, this court had reversed the defendant's conviction on the ground that the record failed to establish that the defendant's waiver of counsel "was the product of an intelligent and competent choice," as required by Article I, section 11, because the trial court had not determined that the defendant understood the elements of the offense. *State v. Meyrick*, 106 Or App 682, 686, 809 P2d 710

---

[1] Article I, section 11, of the Oregon Constitution provides, in part,

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel * * *." The Sixth Amendment to the United States Constitution provides, in part, "In all criminal prosecutions, the accused shall enjoy the right * * * have the Assistance of Counsel for his defence."

(1991). The Supreme Court reversed, holding that Article I, section 11, does not require the trial court to impart a particular piece of information. 313 Or at 134. Rather, the record as a whole must show that the defendant knew of his right to counsel—and, if indigent, of his right to court-appointed counsel—and that he intentionally relinquished or abandoned that right. *Id.* at 133-34.

The "intentional" component of a waiver encompasses "the requirement that the choice must be 'voluntary' " and is separate from the "known right" component. *Id.* at 132 n 8. The latter component

> "refers to a defendant's knowledge and understanding of the right to counsel. It encompasses 'intelligent and competent,' 'intelligently,' and 'knowingly and intelligently.' This is the more expansive of the two components, because a defendant's knowledge and understanding of the right to counsel and of the dangers and disadvantages of self-representation may turn on things other than on what the court tells the defendant, such as the defendant's age, education, and experience and the complexity of the charges and possible defenses."

*Id.* A colloquy on the record between the trial judge and the defendant is the preferred method to assure that the defendant is intentionally waiving a known right; the more relevant information provided "about the right to counsel and about the dangers and disadvantages of self-representation, the more likely it will be that a defendant's decision to waive counsel is an intentional relinquishment or abandonment of a known right or privilege and that the record will so demonstrate." *Id.* at 133 (footnote omitted). Applying those principles, the *Meyrick* court determined that the record established that the defendant there "knew that he had a right to be represented by counsel at trial and that he intentionally relinquished that right." *Id.* at 136. The court similarly concluded that the Sixth Amendment requires a "knowing and intelligent waiver" and that that standard was satisfied.[2] *Id.* at 138.

---

[2] Although defendant's brief contains citations to the Sixth Amendment and federal cases construing it, his argument relies exclusively on *Meyrick*—specifically those portions of *Meyrick* that discuss Article I, section 11. Accordingly, we do not separately discuss the Sixth Amendment basis for defendant's challenge.

■ To satisfy the "known right" legal component of the standard discussed in *Meyrick*, the trial court must determine not only that the defendant is aware of the right to counsel but also that the defendant understands the risks inherent in self-representation. *State v. Miller*, 214 Or App 494, 504, 166 P3d 591 (2007), *adh'd to as modified on recons*, 217 Or App 576, 176 P3d 425, *rev den*, 345 Or 95 (2008) (citing *Meyrick*, 313 Or at 132-33). A defendant need not be aware of all the potential risks in order to be said to appreciate those risks. *State v. Jackson*, 172 Or App 414, 423, 19 P3d 925 (2001). However, the defendant must be more than generally aware of unspecified risks. *Id.*; *State v. Gaino*, 210 Or App 107, 114, 149 P3d 1229 (2006). A defendant can be said to be aware of the risks of self-representation if he understands the benefits that being represented by counsel can provide. *State v. Howard*, 172 Or App 546, 554, 19 P3d 369, *rev den*, 332 Or 305 (2001).

Our task is to evaluate whether the trial court determination challenged by defendant—that defendant made a knowing waiver of counsel—was supported by any evidence in the record. *See State v. Forrest*, 213 Or App 151, 160, 159 P3d 1286 (2007). Defendant contends that the record does not demonstrate that he understood the risks of self-representation. He acknowledges that the trial court provided some explanation of "basic ways" in which counsel might help a "generic defendant" and told him that he would be at a "disadvantage" if he represented himself. However, defendant maintains that those explanations and admonitions were deficient because he was not told "*why* he was at a disadvantage without the assistance of an attorney." (Emphasis in original.) Moreover, he contends that the record suggests that he "lacked sophistication" and "gravely misunderstood the respective roles of the court, the legislature, and the prosecutor."

We conclude that the record supports a finding that defendant understood the risks of self-representation. First, defendant was informed of the charges against him and the maximum penalties. *Cf. Meyrick*, 313 Or at 134 (noting that the trial court advised the defendant in that regard). After being told that his case involved "some fairly serious matters since there's so many charges," he initially stated that he

wanted an attorney to help him. Nothing suggests that defendant did not understand what was at stake.

Second, defendant was told by the court, and had experienced firsthand, some of the basic things that an attorney could do for him. *See Forrest*, 213 Or App at 160-61 (finding sufficient evidence that the defendant appreciated the risks where he was advised of some functions that an attorney could perform and was warned of pitfalls to self-representation and advantages to using an attorney). The court told defendant that an attorney would "file papers, paperwork that's necessary, motions and so forth" as well as "appear with [defendant] at all steps in the proceeding, whether it be a plea or whether it's a trial and so forth." Defendant in fact appeared with his attorney at a hearing before informing the court of his desire to represent himself. At the hearing, defendant's attorney advocated for his conditional release pending trial, which the court denied. Based on his own experience, as well as information given to him by the trial court, defendant was aware of at least some services that an attorney would provide on his behalf.

Third, defendant was specifically told that he would be at a disadvantage if he chose to represent himself, and he indicated that he understood. Defendant faults the trial court for not explaining to him specifically why he was at a disadvantage, citing the *Meyrick* trial court's statement as support. However, that court merely told the defendant that any misperceptions could have serious consequences and that it wanted to be sure that he was "fully advised of the potential problems" in representing himself, without mentioning what those problems might be. *Meyrick*, 313 Or at 128 (internal quotation marks omitted). That does not suggest a requirement that the trial court do anything more than the court did here. Moreover, defendant signed a waiver form in which he stated that he was "aware of the help a lawyer might be to me." At no time did defendant ask the court for clarification on that point.

Finally, the record establishes that defendant is an adult and offers no hint that he might suffer from any mental or intellectual incapacity. His statements and responses were forthright and intelligible. He was assertive about

wanting to file certain motions, and he did so. That some of defendant's motions reflected some misunderstanding about the trial court's authority to intercede on his behalf only demonstrates that he, like many (if not most) lay people, did not fully understand the complexities of the legal system. We note that defendant demonstrated at least some understanding of trial strategy when, after being found guilty in a bench trial on all counts on the contempt charges, he entered into what could be described as a favorable plea agreement on the harassment charges. As in *Meyrick*, the trial court here "was able to observe and assess [defendant's] competency and demeanor and his knowledge of the right to counsel that he was relinquishing." 313 Or at 135. The record here contains adequate information to support a finding that defendant's waiver of counsel was made knowingly.

Affirmed.